# GOMEZ ET AL. *v.* UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA ET AL.

No. A–767. Decided April 21, 1992

PER CURIAM.

Robert Alton Harris brought a 42 U. S. C. § 1983 action claiming that execution by lethal gas is cruel and unusual in violation of the Eighth Amendment. This action is an obvious attempt to avoid the application of *McCleskey* v. *Zant*, 499 U. S. 467 (1991), to bar this successive claim for relief. Harris has now filed four prior federal habeas petitions. He has made no convincing showing of cause for his failure to raise this claim in his prior petitions.

Even if we were to assume, however, that Harris could avoid the application of *McCleskey* to bar his claim, we would not consider it on the merits. Whether his claim is

framed as a habeas petition or as a § 1983 action, Harris seeks an equitable remedy. Equity must take into consideration the State's strong interest in proceeding with its judgment and Harris' obvious attempt at manipulation. See *In re Blodgett*, 502 U. S. 236 (1992); *Delo* v. *Stokes*, 495 U. S. 320, 322 (1990) (KENNEDY, J., concurring). This claim could have been brought more than a decade ago. There is no good reason for this abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process. A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief.

The application to vacate the stay of execution of death is granted, and it is ordered that the orders staying the execution of Robert Alton Harris entered by the United States Court of Appeals for the Ninth Circuit in No. 92–70237 on April 20, 1992, are vacated.

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, dissenting.

In a time when the Court's jurisprudence concerning the imposition of the death penalty grows ever more complicated, Robert Alton Harris brings a simple claim. He argues that California's method of execution—exposure to cyanide gas—constitutes cruel and unusual punishment and therefore violates the Eighth and Fourteenth Amendments. In light of all that we know today about the extreme and unnecessary pain inflicted by execution by cyanide gas, and in light of the availability of more humane and less violent methods of execution, Harris' claim has merit. I would deny the State's application to vacate the stay imposed by the Court of Appeals and allow the courts below to hear and rule on Harris' claim.

Execution by cyanide gas is "in essence asphyxiation by suffocation or strangulation."[1] As dozens of uncontroverted expert statements filed in this case illustrate, execution by cyanide gas is extremely and unnecessarily painful.

> "Following inhalation of cyanide gas, a person will first experience hypoxia, a condition defined as a lack of oxygen in the body. The hypoxic state can continue for several minutes after the cyanide gas is released in the execution chamber. During this time, a person will remain conscious and immediately may suffer extreme pain throughout his arms, shoulders, back, and chest. The sensation may be similar to pain felt by a person during a massive heart attack."[2]

"Execution by gas . . . produces prolonged seizures, incontinence of stool and urine, salivation, vomiting, retching, ballistic writhing, flailing, twitching of extremities, [and] grimacing."[3] This suffering lasts for 8 to 10 minutes, or longer.[4]

Eyewitness descriptions of executions by cyanide gas lend depth to these clinical accounts. On April 6, 1992, Arizona executed Don Eugene Harding.

> "When the fumes enveloped Don's head he took a quick breath. A few seconds later he again looked in my direction. His face was red and contorted as if he were attempting to fight through tremendous pain. His mouth was pursed shut and his jaw was clenched tight. Don then took several more quick gulps of the fumes.

---

[1] Exhibits in Support of Motion for Temporary Restraining Order in No. 92–70237 (ND Cal.) (hereinafter Exhibits), Exh. 1, p. 6 (Declaration of Dr. Terence B. Allen).

[2] *Id.,* Exh. 5, at 4 (Declaration of Richard J. Traystman, Ph. D.).

[3] *Id.,* Exh. 1, at 2.

[4] *Id.,* Exh. 7 (Execution Records, San Quentin Prison).

"At this point Don's body started convulsing violently . . . . His face and body turned a deep red and the veins in his temple and neck began to bulge until I thought they might explode.

"After about a minute Don's face leaned partially forward, but he was still conscious. Every few seconds he continued to gulp in. He was shuddering uncontrollably and his body was racked with spasms. His head continued to snap back. His hands were clenched.

"After several more minutes, the most violent of the convulsions subsided. At this time the muscles along Don's left arm and back began twitching in a wave-like motion under his skin. Spittle drooled from his mouth. . . .

"Don did not stop moving for approximately eight minutes, and after that he continued to twitch and jerk for another minute. Approximately two minutes later, we were told by a prison official that the execution was complete.

"Don Harding took ten minutes and thirty one seconds to die."[5]

The unnecessary cruelty of this method of execution convinced Arizona's Attorney General that that State should abandon execution by gas in favor of execution by lethal injection.[6] His conclusion coincides with that of numerous medical, legal, and ethical experts.[7]

The prohibition on cruel and unusual punishment "is not fastened to the obsolete, but may acquire meaning as public

---

[5] 2 *id.,* Exh. 17, at 3–4 (Affidavit of James J. Belanger).

[6] Memorandum in Support of Emergency Application for Temporary Restraining Order in No. 92–70237 (ND Cal.), p. 8. A bill to substitute lethal injection for lethal gas as Arizona's method of execution is currently pending before that State's legislature. See 4 Exhibits, Exh. 62 (H. B. 2055).

[7] See, *e. g.,* 1 *id.,* Exh. 1, at 3; *id.,* Exh. 2, at 3 (Declaration of Robert H. Kirschner, M. D.); *id.,* Exh. 4, at 3 (Declaration of Kent R. Olson, M. D.).

opinion becomes enlightened by a humane justice." *Weems* v. *United States*, 217 U. S. 349, 378 (1910). Accordingly, we have "interpreted the [Eighth] Amendment 'in a flexible and dynamic manner.'" *Stanford* v. *Kentucky*, 492 U. S. 361, 369 (1989) (quoting *Gregg* v. *Georgia*, 428 U. S. 153, 171 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.)). When the California statute requiring execution by cyanide gas was enacted in 1937, the gas chamber was considered a humane method of execution. Fifty-five years of history and moral development have superseded that judgment. The barbaric use of cyanide gas in the Holocaust, the development of cyanide agents as chemical weapons, our contemporary understanding of execution by lethal gas, and the development of less cruel methods of execution all demonstrate that execution by cyanide gas is unnecessarily cruel. "The traditional humanity of modern Anglo-American law forbids the infliction of unnecessary pain in the execution of the death sentence." *Louisiana ex rel. Francis* v. *Resweber*, 329 U. S. 459, 463 (1947) (opinion of Reed, J.).

Nowhere is this moral progress better demonstrated than in the decisions of the state legislatures. Of the 20 or so States to adopt new methods of execution since our ruling in *Gregg* v. *Georgia*, 428 U. S. 153 (1976), not a single State has chosen execution by lethal gas. Ten years ago, 10 States mandated execution by lethal gas; one by one, those States have abandoned that method as inhumane and torturous. Only California, Maryland, and Arizona currently mandate execution by gas.[8] Of the 168 persons executed in the United States since 1977, only 6 have been executed by lethal gas. We have frequently emphasized that "[t]he clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures." *Penry* v. *Lynaugh*, 492 U. S. 302, 331 (1989). These "objec-

---

[8] As noted above, Arizona is considering abandoning lethal gas as a means of execution. See n. 6, *supra*. Maryland has not yet resumed executions.

tive indicia that reflect the public attitude" toward execution by lethal gas, *Stanford* v. *Kentucky,* 492 U. S., at 370, clearly exhibit a nearly universal rejection of that means of execution.[9] Cf. *Enmund* v. *Florida,* 458 U. S. 782, 788–796 (1982); *Coker* v. *Georgia,* 433 U. S. 584, 593–597 (1977). All of this leads me to conclude that execution by cyanide gas is both cruel and unusual, and that it violates contemporary standards of human decency.[10]

More than a century ago, we declared that "[p]unishments are cruel when they involve torture or a lingering death." *In re Kemmler,* 136 U. S. 436, 447 (1890). In light of our contemporary understanding of the methods of execution and in light of less cruel alternatives presently available, I believe that execution by cyanide gas is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" *Estelle* v. *Gamble,* 429 U. S. 97, 102 (1976) (quoting *Trop* v. *Dulles,* 356 U. S. 86, 101 (1958) (plurality opinion)).

The State contends that Harris should have brought his claim earlier. This is not reason enough to upset the stay issued by the Court of Appeals and dispatch the considered judgment of the 14 appellate judges who voted to rehear the case en banc. Indeed, although reluctant to recognize

---

[9] Notably, a memorandum prepared by California corrections officials correctly observes that "[l]ethal injection is considered to be more humane than other methods of execution (e. g., hanging, firing squad, lethal gas, or electrocution)." 1 Exhibits, Exh. 11, at 4.

[10] In *Wilkerson* v. *Utah,* 99 U. S. 130, 135–136 (1879), we ruled that punishments of "unnecessary cruelty" violated the Eighth Amendment, citing the ancient practices of drawing and quartering and "public dissection" as examples. Similarly in *In re Kemmler,* 136 U. S. 436, 446 (1890), we indicated that "burning at the stake, crucifixion, [and] breaking on the wheel" were as well cruel and unusual. To that list we might have added the garrotte, a device for execution by strangulation developed—and abandoned—centuries ago in Spain. See G. Scott, The History of Capital Punishment 159–160 (1950). To my mind, the gas chamber is nothing more than a chemical garrotte.

as much, the State itself could have avoided this last-minute litigation. In 1983, seven States authorized executions by exposure to cyanide gas. In that year, three Members of this Court indicated that that method of execution raised sufficiently serious questions under the Eighth Amendment to merit review by writ of certiorari. See *Gray* v. *Lucas*, 463 U. S. 1237 (1983). Thereafter, four States (Colorado, Mississippi, Oregon, and Wyoming) abandoned cyanide gas as a method of execution. In light of these events and the decisions of other legislatures, California as well should have revisited its 55-year-old statute.

More fundamentally, if execution by cyanide gas is in fact unconstitutional, then the State lacks the *power* to impose such punishment. Harris' delay, even if unjustified, cannot endow the State with the authority to violate the Constitution. It was this principle that animated Justice Harlan's opinion in *Mackey* v. *United States*, 401 U. S. 667, 692–693 (1971), and that a plurality of this Court embraced in *Teague* v. *Lane*, 489 U. S. 288, 306–307 (1989) (opinion of O'CONNOR, J.). As Harlan emphasized, there are some instances in which the State's interest in finality must give way. When the challenged conduct falls clearly beyond the State's legitimate power, "[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose." 401 U. S., at 693. For these reasons, the State's interest in an immediate execution must yield to a deliberate and careful study of the merits of Harris' claims.

Accordingly, I respectfully dissent.