**In re Petition of Donald THOMAS for Discovery Pursuant to Rule 27 of the Federal Rules of Civil Procedure Directed to Sewall B. Smith, Warden, Maryland Penitentiary.**

Misc. No. 93–95.

United States District Court, D. Maryland.

March 19, 1994.

H. Mark Stichel, Michael W. Donohue, Piper & Marbury, Baltimore, MD, for petitioner.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore, MD, for respondent.

### MEMORANDUM AND ORDER

GARBIS, District Judge.

The Court has before it Donald Thomas's Verified Petition for Discovery and the related legal memorandum. The Court has held a hearing on this matter and has viewed the gas chamber at which the execution in question will take place.

### I. BACKGROUND

Donald Thomas is the Maryland prison inmate under the oldest sentence of death in the State. John F. Thanos, however, another death row inmate, is scheduled to be executed prior to Mr. Thomas. In Maryland, executions are to be carried out by means of lethal gas. Md.Ann.Code art. 27, § 71 (1992). Maryland is the only state that still uses lethal gas as its sole means of carrying out sentences of death. *See Gomez v. United States Dist. Court,* —— U.S. ——, ——, 112 S.Ct. 1652, 1655, 118 L.Ed.2d 293 (1992) (Stevens, J., dissenting) ("Only California, Maryland, and Arizona currently mandate execution by gas."); Cal.Penal Code § 3604 (West 1993) (changing California law to allow for lethal injection); Ariz.Rev.Stat.Ann. § 13–704 (1993) (changing Arizona law similarly).

Mr. Thomas currently is proceeding through the state court system seeking post-conviction relief, asserting that Maryland's infliction of the death penalty by means of lethal gas is unconstitutional. Although the Circuit Court for Baltimore County held an evidentiary hearing on this claim, certain evidence was unavailable and, in the end, the court dismissed the challenge as a matter of law.

At the hearing before the Baltimore County Circuit Court, a key disputed fact was the length of time a person remains conscious after the introduction of lethal gas into the chamber. While the parties agreed that an electroencephalograph test ("EEG") may be dispositive of the question, no such evidence was available. Furthermore, the State's expert witness criticized the lay eyewitness accounts of lethal gas executions provided by Thomas's counsel as unscientific, anecdotal, and too "emotionally charged" to be relied upon. Despite these contentions, the State court made no findings of fact.

If he is denied relief by the state courts, Mr. Thomas plans—at the appropriate time—to raise the same issue before this Court. That time has not arrived. This Court, therefore, makes no comment upon the merits of that claim.

The pending Petition pursuant to Rule 27 of the Federal Rules of Civil Procedure seeks to preserve potentially relevant evidence for eventual consideration by this Court. Specifically, Mr. Thomas asks for permission to videotape the Thanos execution, to perform an EEG upon Mr. Thanos during his execution, and to have an expert witness attend the execution. Mr. Thanos has consented to those requests and the State has not contested his competency to do so. Therefore, even if Mr. Thanos had any legal rights to prevent a videotaping or EEG, he has chosen not to assert those rights.

The State argues that the Petition should be denied because it does not seek discovery in the traditional sense, because the Warden maintains a privilege in the area of the gas chamber during the execution of the death sentence, because the request is not likely to produce relevant evidence, and because of a variety of practical concerns. For the reasons stated herein, the Court does not find the State's position meritorious.

Mr. Thomas shall be afforded the relief requested.

## II. LEGAL PRINCIPLES

A habeas corpus petitioner[1] is entitled to an evidentiary hearing in federal court if

(1) he alleges additional facts that, if true, would entitle him to relief; and (2) he is able to establish the existence of any of the six factors set out by the Court in *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), or the related factors set out in 28 U.S.C. § 2254(d).

*Poyner v. Murray*, 964 F.2d 1404, 1414 (4th Cir.1992). The second prong of the *Poyner* test would be satisfied if, in the state court proceeding, material facts were not adequately developed or the merits of a genuine factual dispute were not resolved. *See* 28 U.S.C. § 2254(d); Rule 8, Rules Governing Habeas Corpus Cases under Section 2254.

Upon a showing of good cause, a federal habeas corpus petitioner is entitled to conduct discovery under the Federal Rules of Civil Procedure. The decision whether to allow such discovery is committed to the sound discretion of the judge before whom the request is made. Rule 6(a), Rules Governing Habeas Corpus Cases under Section 2254. The Advisory Committee has stated that "[d]iscovery may, in appropriate cases, aid in developing facts to decide whether to order an evidentiary hearing." *Id.*, Advisory Comm. Note.

This Court must, then, consider whether Mr. Thomas would be granted discovery if he were a federal habeas corpus petitioner. In the present circumstances, this Court would—and does—exercise its discretion to permit Mr. Thomas to engage in discovery to obtain evidence establishing that a sentence

---

1. Mr. Thomas has not yet attained the status of a federal habeas corpus petitioner. However, the pending Petition must be considered in light of the high probability that he will file a federal habeas corpus action.

of death by lethal gas constitutes cruel and unusual punishment. Although by no means resolving the substantive merits of Mr. Thomas's claim, the Court cannot now state definitively that he will be unable to obtain evidence that would establish his claim.[2]

Having decided to exercise discretion to permit discovery, the Court must now decide whether Mr. Thomas should be permitted the particular discovery he seeks.

The Federal Rules of Civil Procedure, designed "to secure the just ... determination of every action," promote the preservation of all relevant, unprivileged evidence "regarding any matter that may be cognizable in any court of the United States." *See* F.R.Civ.P. 1, 26, 27, 34. The State contends that the discovery Mr. Thomas seeks is not available pursuant to Rule 27—that is, the State contends that Rule 27 only allows the taking of *depositions* prior to the filing of an action. The Court rejects the State's contention. As one noted commentator explains,

> The over-all objective of Rule 27 is to perpetuate evidence for use in a prospective action and to the extent that a use of Rules 34 and 35 will yield such evidence, these Rules should now be available under amended Rule 27, whether or not they are utilized in conjunction with the taking of some deposition.

James W. Moore et al., *Moore's Federal Practice* § 27.13 (2d ed. 1993). *See also Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 55–56 (9th Cir.1961) ("[A] party may, in a proper case, proceed under Rule 27 for an order under Rule 34 without taking a deposition at all...."). Thus, in the name of fairness, judicial economy, and simple common sense, relevant evanescent evidence capable of preservation should be preserved so that arguments and decisions can be made with reference to the best and fullest evidence available.

## III. *DISCUSSION*

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. In oft-repeated words, the Supreme Court has

declared that "[t]he Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). To discern the nature of those "evolving standards," courts are encouraged to look to "objective evidence of how our society views a particular punishment today." *Penry v. Lynaugh,* 492 U.S. 302, 331, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989). Those objective indicia include legislative trends, jury trends, and other accurately measured and accurately collected data. *Id.* What is fundamental, however, is that evolving standards in fact evolve—*i.e.,* they change. Therefore, a broad array of evidence based on technological advances and new perspectives on old practices can be relevant to a court evaluating an Eighth Amendment claim.

The means of carrying out a death sentence raises Eighth Amendment questions when it "involve[s] torture or a lingering death" or causes "the infliction of unnecessary pain." *See In re Kemmler,* 136 U.S. 436, 447, 10 S.Ct. 930, 934, 34 L.Ed. 519 (1890); *Louisiana v. Resweber,* 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947). Furthermore, it is evident from recent, well-reasoned, judicial statements that the decency of execution by lethal gas may be, in the proper context, a matter of legitimate dispute. *See, e.g., Gomez v. United States Dist. Court,* — U.S. ——, ——, 112 S.Ct. 1652, 1654, 118 L.Ed.2d 293 (1992) (Stevens, J., dissenting) (citing "dozens of uncontroverted expert statements" showing that "execution by cyanide gas is extremely and unnecessarily painful"). Thus, evidence regarding the length of consciousness and level of pain and suffering of an individual exposed to lethal gas is likely to be relevant to what appears to be this Court's impending Eighth Amendment inquiry.

The State alleges that the Warden maintains a privilege in the area of the gas chamber during the conduct to the execution and that to allow Thomas's request would be to

---

2. The Court need not, and will not, speculate upon the possible degree to which the requested evidence may establish the existence of a differ-

ent situation than has heretofore been assumed to exist when a person is executed by lethal gas.

infringe upon the "confidentiality" surrounding such proceedings.[3] That alleged privilege is based upon the fact that the warden is entrusted with semi-exclusive control over the conduct of executions, Md.Ann.Code § 73 (1992), once-public executions are now performed with limited public access, *id.*, and the exact time of the execution is not to be disclosed to the public. *Id.* § 75(f).

This Court does not find that any asserted "confidentiality right" outweighs Mr. Thomas's right of access for the purpose of collecting and preserving critical discovery. The warden's discretion in regard to the conduct of executions is limited by statutory and constitutional constraints. While the number of "respectable citizens" allowed to attend an execution is limited to twelve, the statute does not explain how or by whom they are to be named. Nor does the statute prohibit additional individuals performing functional roles—technicians, clergy, counsel—from attendance. *See id.* § 73.

Authentic privacy interests asserted in the execution process would not be disturbed by the proposed discovery. As revealed by the legislative history, the reasons for restricting access to executions were unrelated to the pursuit of legitimate legal claims. Rather, the intent of the limited-access provision was

> to relieve the counties of this State from the curious mobs that frequent hangings taking place in the counties of this State, and who attempt to make public affairs of the same.

1922 Md.Laws ch. 465, § 10.

Mr. Thomas does not seek permission to televise Mr. Thanos's execution, or in any way make a public spectacle of it. Likewise, the confidentiality of the time of the execution need not be threatened by the granting of the Petition. Advance planning (as is likely to occur in any event) and flexibility on the part of those designated to conduct the discovery can, and will, prevent the general public from being informed contrary to the statutory mandate.

The State further argues that much of the discovery requested is impractical and/or impossible to accommodate. After viewing the area in question, the Court is well able to appreciate that physical constraints may limit somewhat its ability to grant all of Mr. Thomas's requests. However, the Court finds that the essence of Mr. Thomas's request, as well as the State's legitimate interests, can be duly accommodated.

Certainly, the videotaping and EEG will require that additional equipment be brought into the area. However, it appears that available equipment can overcome the State's legitimate safety and maneuverability concerns. Moreover, considering the space available in the witness room, the Court finds that there would be no practical problem caused by the attendance of an expert eyewitness for Mr. Thomas.

## IV. CONCLUSION

For the foregoing reasons:

1. The Verified Petition for Discovery is **GRANTED.**

   a. Counsel for Mr. Thomas and a qualified technician shall be allowed access to the gas chamber area to set up a **videotape camera** capable of recording a frontal view of Mr. Thanos in the chamber.

   1) Access will be provided prior to the week in which the death sentence shall be executed.

   2) The videotape camera shall be mounted and operated in a fashion that will not interfere with the execution.

   3) Counsel for Mr. Thomas is authorized to videotape the entire execution, from the time Mr. Thanos is placed in the gas chamber to the time his body is removed from the chamber.

   b. Counsel for Mr. Thomas and a qualified technician shall be allowed access to the gas chamber area to set up the equipment for an **electroencephalograph test.**

---

**3.** The State conceded at the hearing that any quasi-privacy interest it might assert in the execution of the death sentence would not prevent this Court from authorizing a videotaping.

1) Reasonable access shall be provided prior to the week in which the death sentence shall be executed.

2) The equipment shall be self-contained and operated in a fashion that will not interfere with the execution.

c. An **expert witness** designated by Mr. Thomas shall be allowed to attend the execution of Mr. Thanos.

1) The precise positioning of the witness will be determined by agreement of the State and Mr. Thomas prior to the week in which the death sentence may be executed.

2) In no event will the witness do (or state) anything that may interfere with the execution.

2. Appropriate procedures will be established by the State to inform counsel for Mr. Thomas, any essential technician, and the expert witness of the time when they must go to the gas chamber for the purposes stated above, consistent with the time when other witnesses are so advised.

3. Any videotape or EEG results shall be delivered to the Clerk of this Court, without prior viewing or copying, by counsel for Petitioner as soon as practicable.

4. This Order does not authorize any disclosure of any videotape or EEG results to anyone except as may be permitted by further Order of this Court.