Justice Scalia,
with whom The Chief Justice and Justice Thomas join,
dissenting.
I dissent from the Court’s orders of May 1 and May 7, 2002, granting the applications of Curtis Moore and Brian Edward Davis for stay of execution of sentence of death. The Court has entered these stays even though the judgments of the Texas Court of Criminal Appeals from which review is sought dismissed the applicants’ habeas petitions on adequate and independent state grounds. In each case, the Court disrupts the State’s criminal process to entertain a last-minute claim (unconstitutionality of executing the mentally retarded) that was not raised previously at trial, or in extensive proceedings for direct and collateral re *1045 view. Indeed, in each case even the factual predicate for the new claim (mental retardation) had not been asserted at trial — and in Davis’s case had not been asserted even in subsequent proceedings, right up until the day of scheduled execution. The Court’s action is unprecedented.
I
The first of these murderers, Curtis Moore, participated in three brutal killings during the course of a drug deal and robbery. One victim was stuffed in the trunk of a car, shot, doused with gasoline, and lit afire. The second victim was driven to his girlfriend’s home, where he and the third victim, the girlfriend, were shot dead. Before trial, Moore had discussed with his counsel the possibility of introducing into evidence an IQ test administered to Moore when he was 12 years old, showing a score of 68, a figure within the “mildly retarded” range. Counsel advised Moore that if the defense presented psychological testimony, the State could have an expert witness interview him to determine whether he posed a continuing threat to society. Because a pretrial IQ test (administered at counsel’s request) showed a score of 76, within the “normal” range, Moore’s counsel believed that introduction of the results of the earlier test would do more harm than good. Moore himself did not believe the earlier test result, insisted he was normal, and told counsel he did not want psychological testimony introduced.
Moore was convicted of capital murder and sentenced to death in November 1996. The Texas Court of Criminal Appeals affirmed, Moore v. State, No. 72,705 (Apr. 28, 1999). Moore’s first state habeas petition alleged trial counsel was ineffective in failing to present evidence of his mental retardation at sentencing. The petition was denied, Ex parte Moore, No. C-297-3899-0631559-A (Dist. Ct. Tarrant County, Tex., Sept. 9, 1999), aff’d, No. 42,810-01 (Tex. Crim. App., Nov. 3, 1999). So was his first federal habeas petition, which raised the same claim of ineffective assistance, Moore v. Johnson, No. 4:99-CV-960-A (ND Tex., July 13, 2000), aff’d sub nom. Moore v. Cockrell, No. 00-10870 (CA5, Oct. 10, 2001), cert. denied, ante, p. 1040. On the day before his scheduled execution, Moore filed a second state habeas petition in which he claimed, for the first time, that his execution would violate the Eighth Amendment because he is mentally retarded. In support of this claim, Moore presented the same evidence that, *1046 in prior habeas petitions, he had claimed his attorney should have presented at sentencing. The Texas Court of Criminal Appeals dismissed the petition as an abuse of the writ under Tex. Code Crim. Proc. Ann., Art. 11.071, §5(a) (Vernon Supp. 2002), which generally precludes second or subsequent habeas petitions involving claims that could have been raised previously. Ex parte Moore, No. 42,810-02 (Apr. 30, 2002). Moore petitioned this Court for a stay of execution pending its decision in Atkins v. Virginia, No. 00-8452, cert. granted, 533 U. S. 976 (2001).
The second murderer, Brian Edward Davis, was convicted and sentenced to death in June 1992 for a killing during the course of a robbery. The mentally retarded victim was found in his ransacked apartment with a swastika drawn on his abdomen and 11 stab wounds to his neck, chest, abdomen, and back. Although Davis’s trial attorney introduced evidence of a learning disability, he did not argue that Davis was mentally retarded. Indeed, a psychologist testified at trial that Davis was not mentally retarded, and Davis’s score of 74 on a 1984 IQ test placed him in the range of normal intellectual functioning. The Texas Court of Criminal Appeals affirmed Davis’s conviction and sentence, Davis v. State, 961 S. W. 2d 156 (1998), denied his first application for state postconviction relief, Ex parte Davis, No. 40,339-01 (Mar. 10, 1999), and dismissed his second state habeas petition as an abuse of the writ, Ex parte Davis, No. 40,339-02 (Sept. 13, 2000). After his federal habeas petition was denied, Davis v. Cockrell, No. 00-CV-852 (SD Tex., Oct. 1, 2001), Davis filed his third state habeas petition, which was likewise dismissed as an abuse of the writ, Ex parte Davis, No. 40,339-03 (Tex. Crim. App., Apr. 29, 2002). The Fifth Circuit denied Davis’s request for authorization to file a successive federal habeas petition, In re Davis, No. 02-20479 (May 6, 2002); we denied his petition for an original writ of habeas corpus, In re Davis, post, p. 1050. On the day of his scheduled execution, Davis filed a fourth state habeas petition, raising an Eighth Amendment claim, and asserting the fact of mental retardation, for the first time. The Texas Court of Criminal Appeals once again dismissed the petition as an abuse of the writ, and Davis petitioned this Court for a stay of execution pending its decision in Atkins, supra.
It is apparent on the face of both these applications that the conditions for stay do not exist.
*1047 II
A stay is appropriate only when there is a “ ‘reasonable probability’” that four Members of this Court will grant certiorari, a “‘significant possibility’” that the Court, after hearing the case, will reverse the decision below, and a “ ‘likelihood’ ” that the applicant will suffer irreparable harm absent a stay. Barefoot v. Estelle, 463 U. S. 880, 895 (1983); see also Rubin v. United States, 524 U. S. 1301, 1302 (1998) (Rehnquist, C. J., in chambers); Edwards v. Hope Medical Group for Women, 512 U. S. 1301, 1302 (1994) (Scalia, J., in chambers). It is a firm rule that “[t]his Court will not review a question of federal law decided by a state court if the' decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.” Coleman v. Thompson, 501 U. S. 722, 729 (1991). That rule applies “whether the state law ground is substantive or procedural,” and in the case of direct review of a state-court judgment (which is at issue here) it is jurisdictional. Ibid.
The Texas Court of Criminal Appeals dismissed each of these applicants’ successive habeas petitions as an abuse of the writ under Tex. Code Crim. Proc. Ann., Art. 11.071, §5(a) (Vernon Supp. 2002), which declares in relevant part:
“[A] court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that. . .
“(1) the current claims and issues have not been and could not have been presented previously . . . because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; ... or
“(3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state’s favor one or more of the special issues that were submitted to the jury in the applicant’s trial under Article 37.071 or 37.0711 [which list aggravating and mitigating factors] . . . .”
There is no question that this procedural bar is an adequate state ground; it is firmly established and has been regularly followed by Texas courts since at least 1994. See Barrientes v. Johnson, 221 F. 3d 741, 758-759 (CA5 2000).
*1048 Nor could there be a question whether it is independent of federal law. Insofar as § 5(a)(1) is concerned, Texas courts did not pass on any issue of federal law in deciding whether applicants’ Eighth Amendment claim was “previously unavailable.” A claim is “unavailable” under Texas law only “if the legal basis was not recognized by or could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before” the date of the initial habeas application. Art. 11.071, §5(d). The question whether a particular claim is “reasonably formula[ble]” from federal or state appellate decisions within the meaning of the Texas statute is a question of Texas, not federal, law. To be sure, Texas’s answer cannot be so arbitrary or unreasonable as to violate due process, but that is not a problem here. On any assessment, applicants’ claim — that execution of the mentally retarded violates the Eighth Amendment — was “available” when applicants filed their first state habeas petitions in 1999. In fact, the claim was made in at least two pre-1999 cases before the Texas Court of Criminal Appeals itself. See Bell v. State, 938 S. W. 2d 35, 55 (1996) (en banc); Ramirez v. State, 815 S. W. 2d 636, 654-655 (1991) (en banc).
The application of § 5(a)(3) to these cases is similarly independent of federal law. The Texas Court of Criminal Appeals was not required to pass on any federal question in deciding whether “clear and convincing evidence” showed that “but for a violation of the United States Constitution no rational juror would havé answered in the state’s favor one or more of the special issues that were submitted to the jury.” The Eighth Amendment violation that applicants have alleged (failure to exempt the mentally retarded from the death penalty) could not possibly have caused any rational juror to give a different answer to the special issues — viz., whether there is a probability that the defendant would commit criminal acts of violence in the future, Tex. Code Grim. Proc. Ann., Art. 37.071, §§ 2(b)(1), 3(b)(2) (Vernon Supp. 2001), and (in Moore’s case only) whether “mitigating circumstances” outweigh aggravating factors, § 2(e)(1). Not only is the constitutional point irrelevant to those issues, but the jury had no cause to think that either applicant was retarded, since neither had asserted mental retardation at trial or in the penalty phase.
*1049 The decisions of the Texas Court of Criminal Appeals, then, clearly rest on adequate and independent state grounds. It is equally clear that applicants have neither demonstrated cause for their procedural default nor have raised even a colorable claim of mental retardation. They present the same evidence that their trial attorneys concluded was too insubstantial to support an argument of mental retardation. IQ tests place both applicants above the highest cutoff used in state legislation prohibiting execution of the mentally retarded.* Brief for Respondent in Atkins v. Virginia, O. T. 2001, No. 00-8452, pp. 40-41. And in Davis’s case, a psychologist testified at trial that the defendant was not mentally retarded. Thus, the specter of a “fundamental miscarriage of justice” (if Atkins should proscribe execution of the mentally retarded) could not possibly induce the Court to ignore the adequate and independent state grounds. Coleman, supra, at 750.
If prior law is to be adhered to, there is no possibility, much less a “significant” one (as the granting of a stay requires), that this Court will reverse the judgments of the Texas Court of Criminal Appeals. And I have not mentioned a further consideration, which should weigh heavily in the present circumstances: The Court “may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief.” Gomez v. United States Dist. Court for Northern Dist. of Cal., 503 U. S. 653, 654 (1992) (per curiam). The Court’s granting of these stays not only disrupts settled law but invites meritless last-minute applications to disrupt the orderly state administration of the death penalty.

Moreover, all States prohibiting execution of the mentally retarded require a showing of impairment in adaptive behavior. Brief for Respondent in Atkins v. Virginia, O. T. 2001, No. 00-8452, pp. 40-41. The psychological evaluation that gave the 12-year-old Moore an IQ score of 68 (which is below the cutoff of some States) found that his adaptive abilities were “ Tow average.’ ” Brief in Opposition 3-4 (quoting State Habeas Tr. 67-68).