IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-51,135-01





EX PARTE CARLOS GRANADOS







ON APPLICATION FOR WRIT OF HABEAS CORPUS


IN CAUSE NO. 98-758-K277A FROM THE


277
TH DISTRICT COURT OF WILLIAMSON COUNTY





Per Curiam. Johnson, J., filed a concurring statement, joined by Meyers and Price, JJ.


ORDER



 Motions are before us relating to an application for writ of habeas corpus filed
pursuant to Texas Code of Criminal Procedure, Article 11.071. (1)

 Applicant was convicted of capital murder on April 23, 1999. The evidence at trial
shows that applicant was the on-again, off-again boyfriend of Katherine Jimenez. At 

the time of the capital murder, applicant was living in Katherine's Georgetown apartment,
which she shared with her three-year-old son, Anthony. One day, applicant became furious
that Katherine would not take a nap with him while Anthony was watching TV in the living
room. Katherine said that she had too much work to do. Applicant attacked Katherine with
a knife, stabbing her and slashing her neck until the knife broke. Katherine simultaneously
struggled and attempted to placate applicant by telling him that she loved him. She tried to
call the police or escape, but applicant caught her, dragged her into the kitchen, and
repeatedly stabbed her again. She played dead. Applicant then left the kitchen and Katherine
heard her son Anthony scream, "I don't want to die. Don't kill me. I don't want to die." 
Applicant stabbed Anthony in the chest and he died. Hours later, Katherine's family,
concerned that she had not arrived at work, contacted the police who came to the apartment
the next morning on a "welfare call." They found applicant inside, still holding the bloody
knife, and they saw blood stains covering the carpet, walls, and chairs. Katherine had
survived and told the officers, "He killed my baby, and I have been waiting for you to come." 
The jury convicted applicant of capital murder and, based on the jury's answers to the special
issues, the trial judge sentenced him to death. This Court affirmed the conviction and
sentence. Granados v. State, 85 S.W.3d 217 (Tex. Crim. App. 2002). 

 On August 23, 2001, applicant filed his initial application for writ of habeas corpus
pursuant to Article 11.071. Although it was an unusually brief writ application, it raised a
single constitutional claim with two subparts: (1) "The sentencing stage testimony of Walter 

Quijano clearly injected the issue of race into applicant's sentencing proceeding"; and (2)
even if trial counsel's decision to call Dr. Quijano as a defense witness could be called "trial
strategy," it nonetheless "served to clear the way for jurors to feel free to consider the issue
of race in assessing applicant's punishment." This writ application was filed after the
Attorney General of Texas had confessed error in another death penalty case in which Dr.
Quijano had testified for the State. See Saldano v. State, 70 S.W.3d 873 (Tex. Crim. App.
2002) (discussing Attorney General's earlier confession of error). The habeas court entered
findings of fact and conclusions of law recommending denial of relief. Based on these
findings, we denied relief. Ex parte Granados, No. WR-51,135-01 (Tex. Crim. App.
September 18, 2002).

 Applicant then filed a writ petition in federal court where he was represented by his
current counsel, attorneys in the Austin law firm of Graves, Dougherty, Hearon & Moody. 
That law firm made basically the same two claims in federal court that applicant's state
habeas counsel made in his state writ application. The law firm also added a claim
concerning the applicability of Apprendi/Ring (2) to the Texas capital sentencing procedure. 
The federal district court denied relief, the Fifth Circuit, in a published opinion, affirmed the
district court, and the United States Supreme Court denied certiorari. Granados v.
Quarterman, 455 F.3d 529 (5th Cir. 2006), cert. denied, 166 L.Ed.2d 568 (2006).

 Two days before his scheduled execution, applicant moved this Court to vacate the
judgment, appoint competent counsel and grant time for him to investigate and file another
application for writ of habeas corpus. Alternatively he asks that this Court, on its own
motion, rehear his initial application and permit him to raise unidentified new issues. Lastly
he asks that his execution be stayed to accommodate granting the motion for a new
application for writ of habeas corpus.

 We have reviewed applicant's motion and find that there is no basis upon which to
vacate the judgment and begin a new application for writ of habeas corpus. 

 First, applicant has failed to demonstrate that he is entitled to a stay of execution. The
United State Supreme Court has described a stay of execution as "an equitable remedy" that
"must take into consideration the State's strong interest in proceeding with its judgment and
. . . [an applicant's] attempt[s] at manipulation." (3) Accordingly, 

 before granting a stay, a district court must consider not only the likelihood of
success on the merits and the relative harms to the parties, but also the extent
to which the inmate has delayed unnecessarily in bringing the claim. Given the
State's significant interest in enforcing its criminal judgments, there is a strong
equitable presumption against the grant of a stay where a claim could have
been brought at such a time as to allow consideration of the merits without
requiring entry of a stay. (4) 


 Recently, four members of this Court employed the Supreme Court's standard when
concurring with the majority's decision to lift a temporary stay of execution. (5) In that case,
a temporary stay was granted to consider a subsequent habeas application challenging the

 chemicals used by the Texas Department of Criminal Justice in its lethal injection protocol. (6)
The four concurring judges concluded that Applicant had failed to make a prima facie
showing that his constitutional claim was meritorious and joined the majority decision to lift
the stay and deny habeas relief. (7)

 Second, in his present motion, applicant fails to raise any constitutional claim or issue
that would invalidate his conviction or sentence. Although applicant's current lawyers have
apparently represented him for four years in federal court and are presumably familiar with
their client, the facts of the case, the law relating to the case, and the lawyers who originally
represented applicant, they make no constitutional claims concerning the original trial and
sentencing in this case. The only claim they make is that applicant's original habeas attorney
is no longer on the list of 11.071 lawyers for appointment of indigent death row inmates, and
he had filed a very short state-court writ application raising only one claim. In essence,
applicant is asking for a "Do-over" not because his trial or sentencing was fundamentally
unfair, but because his original writ attorney is no longer on the attorney appointment list and
he filed a succinct writ application.

 In some circumstances, brevity is the wisest course. A single valid legal claim is all
that is necessary to achieve the desired result. The "kitchen sink" approach is not necessarily
a positive one as forty-seven invalid claims are not weightier than a single valid one. Nor
is verbosity a suitable substitute for cogency. A single, well-crafted sentence may speak
volumes while a 150 page application may be full of sound and fury signifying nothing. 
Courts do not (and should not) measure the worth of a writ application by either the number
of claims presented or the length of the application. 

 In the present case, a competent, highly qualified writ attorney might well have
believed that a single, succinct claim that invoked a prior legal claim by another death row
inmate concerning the possible racial overtones of testimony for which the Texas Attorney
General confessed error was a valid strategy. Although applicant's claim ultimately did not
result in relief, there is certainly nothing inappropriate in the making or urging of that claim. 
Nor, given the recency of the Saldano case, did this Court need any lengthy legal or factual
recitation to understand the constitutional claim.

 Furthermore, applicant's current lawyers raised the same two-part claim in federal
court, although it was ultimately rejected on its merits in the Fifth Circuit. Granados v.
Quarterman, 455 F.3d 529 (5th Cir. 2006). And applicant raised one additional claim in
federal court, demonstrating that there was a second constitutional claim which these new
lawyers thought sufficiently important to raise even though it had not been made in the state
proceedings. Thus, had there been other constitutional claims to raise, there is reason to
believe that his lawyers would have included them in the federal petition, even though they
had not been first raised in the state proceeding. Further, these lawyers apparently did not
raise any issue in federal court concerning the relative brevity of applicant's state habeas
application. Had it done so, the Fifth Circuit presumably would have mentioned this fact in
its published opinion, and applicant's lawyers would surely have mentioned that court's
response in their current motion. 

 Applicant has failed to persuade us that we should reconsider our previous denial of
relief on his writ application, or that he is entitled to any other relief. We deny applicant's
motion to vacate the judgment and his motion for stay of execution.

 IT IS SO ORDERED THIS THE 10TH DAY OF JANUARY, 2007.

Do Not Publish
1. Applicant entitles his document, "Motion to Vacate Judgment, For Appointment of
Competent State Post-Conviction Counsel and For Time to Prepare and File a Meaningful
Application for Post-Conviction Writ of Habeas Corpus[,] Alternatively Suggestion for
Rehearing on the Court's Own Motion to Address and Provide Remedy for Deficiant
Representation."
2. Apprendi v. New Jersey, 530 U.S. 466 (2000); Ring v. Arizona, 536 U.S. 584 (2002).
3. Nelson v. Campbell, 541 U.S. 637, 649 (2004) (quoting Gomez v. United States
Dist. Court for Northern Dist. of Cal., 503 U.S. 653, 654 (1992) (per curiam)).
4. Id. at 649-50. 
5. Ex parte O'Brien, 190 S.W.3d 677, 678-83 (Tex. Crim. App. 2006) (Cochran, J.,
concurring).
6. Id. at 678.
7. Id. at 680-83.