[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11878
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-00057-KD-MU


CHRISTOPHER LEE PRICE,

                                    Plaintiff - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
WARDEN, HOLMAN CORRECTIONAL FACILITY

                                    Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(May 24, 2019)

Before TJOFLAT, WILSON and ROSENBAUM, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Christopher Lee Price appeals from the district court's denial of Price's motion to stay his execution under 28 U.S.C. § 1292(a)(1). Before addressing Price's arguments, we pause to briefly set forth the facts and relevant history.

**I.**

The last time Price was before us, we issued a decision affirming, on different grounds, the district court's denial of a previous motion for stay of execution ("First Motion for Stay") filed by Price. *See Price v. Comm'r, Dep't. of Corr.*, 920 F.3d 1317 (11th Cir. 2019). There, we found that the district court had before it no reliable evidence from which to conclude that execution by nitrogen hypoxia would significantly reduce Price's risk of substantial pain as compared to the State of Alabama's current three-drug lethal-injection protocol. *Id*. at 1330. In reaching this conclusion, we determined that the district court improperly relied on a preliminary draft report by East Central University labeled "Do Not Cite." *Id*.

Following our affirmance, and just before his scheduled execution, Price filed a petition for writ of certiorari and an application for a stay of his execution with the Supreme Court. While those filings were pending, Price filed another motion for stay of execution with the district court, seeking essentially the same relief as the first, but attaching several affidavits and a final report by the East Central University

2

("Second Motion for Stay").[1] The district court granted the Second Motion for Stay hours before Price's scheduled execution, after concluding that Price met his burden of showing a likelihood of success on the merits of his Eighth Amendment claim. The State immediately filed with this Court a motion to vacate the stay, arguing, in part, that the district court lacked jurisdiction to enter its order. We found that substantial questions about our jurisdiction and the district court's jurisdiction were present, so we entered an order staying Price's impending execution until further order of the Court. The State then sought for the Supreme Court to vacate the stays.

In a 5-4 decision entered in the early morning hours of April 12, 2019, the Supreme Court lifted the stays entered by both this Court and the district court. The majority explained its reasoning as follows:

> The application to vacate the stay of execution, presented to Justice THOMAS and by him referred to the Court, is granted, and the stays entered by the District Court for the Southern District of Alabama and the United States Court of Appeals for the Eleventh Circuit on April 11, 2019, are vacated. In June 2018, death-row inmates in Alabama whose convictions were final before June 1, 2018, had 30 days to elect to be executed via nitrogen hypoxia. Ala. Code § 15-18-82.1(b)(2). Price, whose conviction became final in 1999, did not do so, even though the record indicates that all death-row inmates were provided a written election form, and 48 other death-row inmates elected nitrogen hypoxia. He then waited until February 2019 to file this action and submitted additional evidence today, a few hours before his scheduled execution time.

---

[1] In the meantime, Price filed with this Court an Emergency Motion to Immediately Issue Mandate.

3

> *See Gomez v. United States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653, 654, 112 S. Ct. 1652, 118 L.Ed.2d 293 (1992) (per curiam) ("A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief.").

*Dunn v. Price*, 139 S. Ct. 1312 (Apr. 12, 2019). By the time the Supreme Court entered its decision, however, Price's death warrant had already expired, so his execution did not proceed as originally scheduled.

A few days later, on April 15, 2019, the State filed an emergency motion for an expedited second execution date with the Alabama Supreme Court. On the same date, the district court held a status conference with the parties to determine how to proceed with Price's method-of-execution lawsuit. At the conference, Price requested that the district court schedule his Section 1983 claim for trial. In response to questions posed by the district court during the status conference, both Price and the State filed their relative positions regarding whether the district court had jurisdiction to proceed with the case and whether the Supreme Court's order vacating the stays of Price's execution resolved Price's Section 1983 claim. Both parties agreed that the district court had jurisdiction to proceed with the case. And although both parties appeared to agree that the Supreme Court's April 12, 2019, order did not resolve the merits of the Section 1983 action, the State argued that the order made it clear that Price was not entitled to another stay of execution.

Soon thereafter, the district court entered an order granting Price's oral request for an expedited trial, setting a June 10, 2019, non-jury trial on Price's Eighth Amendment claim. In the same order, the district court explained, "The Plaintiff's request that the case be expedited further, if the execution date is set before the trial, is **DENIED**. Pursuant to the Supreme Court's [April 12, 2019,] decision, no further stay of execution will be granted."[2] One week later, on April 29, 2019, the State of Alabama set Price's new execution date for May 30, 2019.

In response, Price filed a motion in which he sought, among other things, another stay of execution ("Third Motion for Stay"). The following day, on May 1, 2019, the district court denied, in part, Price's request to stay his execution. In doing so, the district court set forth the entirety of the Supreme Court's April 12, 2019, majority decision. The district court then explained that the "Supreme Court vacated the stay of execution due to Price's failure to timely elect for nitrogen hypoxia, making clear that a stay of execution is not an available remedy to Price." The district court entered another order denying the remaining portion of Price's motion on May 2, 2019.

Price now appeals the district court's orders (1) indicating that no further stays will be entered, and (2) denying his Third Motion for Stay. He argues that the district

[2] At the time, Price's new execution date had not yet been set.

5

court erred as a matter of law in construing the Supreme Court's April 12, 2019, decision as categorically precluding it from issuing any further stays in Price's case.

## II.

We review the district court's categorical denial of future motions for stay of execution, as well as its denial of the Third Motion for Stay, for abuse of discretion. *Brooks v. Warden*, 810 F.3d 812, 818 (11th Cir. 2016). An error of law is an abuse of discretion. *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1331 (11th Cir. 2014). After consideration, and in light of the Supreme Court's prior ruling in its April 12, 2019, order, we conclude that though the district court may not categorically deny all future motions for stay, without knowledge of the particular bases for them, the district court did not abuse its discretion when it denied Price's Third Motion for Stay.

## III.

We have carefully reviewed the Supreme Court's April 12, 2019, decision. There, a majority of the Court lifted the stays of execution entered by this Court and the district court based on what it found to be Price's undue delay in the case. *See Dunn*, 139 S. Ct. at 1312 (citing *Gomez v. United States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653, 654 (1992) (per curiam) ("A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief.")). The majority articulated three examples in support of its finding

6

that Price's actions were untimely and supported a denial of his motion for stay of execution: (1) Price's failure to timely elect nitrogen hypoxia within the 30-day statutory opt-in period; (2) Price's decision to wait until February 2019 to file a Section 1983 action challenging his method of execution; and (3) Price's failure to submit potentially adequate evidence until a few hours before his scheduled execution time. *See id.*

Recently, albeit in denying a different petition for writ of certiorari filed by Price, Justice Thomas provided further insight regarding what he and two other Justices perceived to be dilatory behavior by Price in this case. *Price v. Dunn*, No. 18-1249, 2019 WL 2078104 (U.S. May 13, 2019) (mem.). As evidence of unjustified delay, Justice Thomas pointed out that Price

> delayed in bringing this successive § 1983 action until almost a year after Alabama enacted the legislation authorizing nitrogen hypoxia as an alternative method, six months after he forwent electing it as his preferred method, and weeks after the State sought to set an execution date.

*Id.* at *4 (Thomas, J., concurring). According to Justice Thomas, entering a stay "under these circumstances—in which the petitioner inexcusably filed additional evidence hours before his scheduled execution after delaying bringing his challenge in the first place—only encourages the proliferation of dilatory litigation strategies that we have recently and repeatedly sought to discourage." *Id.* (citations omitted).

7

Here, Price claims the district court misconstrued the Supreme Court's April 12, 2019, order when it found that the decision precluded the district court from issuing any further stay of execution. We agree with Price, but only to the extent that the district court understood the Supreme Court's April 12, 2019, order to categorically preclude the issuance of further stays of execution in this case, no matter the reason. If, for example, some last-minute event occurred that potentially provided an appropriate basis for a stay and could not possibly have been brought earlier because the triggering event did not occur until immediately before the motion was brought (*e.g.*, if the State substituted baby aspirin for midazolam at the last minute), the Supreme Court's reasoning that Price could not obtain a stay because he had been dilatory in seeking one would not apply, and the motion would have to be evaluated on its own merits.

But with respect to the order denying the Third Motion for Stay, that is not an issue. As grounds for its denial, the district court stated that the "Supreme Court vacated the stay of execution due to Price's failure to timely elect for nitrogen hypoxia, making clear that a stay of execution is not an available remedy to Price." To the extent the district court suggested that Price was not able to seek a stay of execution only because he failed to timely opt-in to Alabama's nitrogen hypoxia protocol within thirty days, we disagree. The Supreme Court's April 12, 2019, decision did not announce such a holding.

Rather, as we have discussed, the Supreme Court vacated the stays because it found Price's actions to be untimely. While the Supreme Court's April 12, 2019, decision mentioned Price's failure to opt-in to the nitrogen hypoxia protocol within the thirty-day statutory period, it did so merely as an example in support of its conclusion that Price did not act in a timely manner—both in bringing his Section 1983 claim and later in filing his First and Second Motions for Stay.

We need not opine on how much of a role Price's missing the thirty-day opt-in period played in the Supreme Court's determination to vacate the stays. The Supreme Court made clear by pointing to various examples—including Price's delay in bringing his action and filing additional evidence just a few hours before his execution—that Price waited too long to advance his claims. Accordingly, the Supreme Court deemed Price's claims untimely regardless of the thirty-day opt-in period put into place by the State of Alabama.

That the Supreme Court found Price's claims to be untimely is now the law of this case. *See United States v. Anderson*, 772 F.3d 662, 668 (11th Cir. 2014) (appellate decisions bind subsequent proceedings in the same case "not only as to explicit rulings, but also as to issues decided necessarily by implication on the prior appeal.") (citation and internal quotation marks omitted). Considering this fact, we agree with the district court's conclusion that it could not grant Price's Third Motion for Stay. Here, Price asserts that he is entitled to a stay of execution to allow the

district-court trial proceedings to occur, since the Supreme Court did not opine on the merits of his challenge.

But the problem for Price is that the Supreme Court's reasoning for denying Price a stay applies equally to his Third Motion for Stay as it did to his First and Second Motions. In other words, Price brings no new claims that he could not have known about earlier. And if Price's claims were untimely in April 2019, they are no more timely now that an additional six weeks have passed.

Price points to the Supreme Court's recent grant of stay of execution in *Murphy v. Collier*, No. 18A985, 2019 WL 2078111, at *1 (U.S. Mar. 28, 2019) (mem.), to support his argument that the district court's interpretation of the Supreme Court's April 12, 2019, opinion was flawed. He notes that in *Murphy*, the petitioner challenged a Texas policy that had been in place for years, and the challenge came only one month prior to the petitioner's execution. Price also points to Justice Kavanaugh's concurrence, in which he stated that the one-month filing period was sufficiently timely. Price further emphasizes that here, he sought to be executed by nitrogen hypoxia in January 2019, more than a month prior to having been assigned an execution date. So by implication, Price argues his claim is not untimely.

Notwithstanding that *Murphy* presents circumstances and claims dissimilar to those presented here, the holding in *Murphy*, is the law of the case in *that case*. It does not dictate the outcome here where the Supreme Court has already spoken on

the issue of timeliness. The fundamental problem for Price is the Supreme Court has already found his claim to be untimely and, therefore, unworthy of a stay of execution. And because that holding it is the law of *this case*, both this Court and the district court are bound by the April 12, 2019, decision.

## IV.

Although we do not agree with the district court's reasoning for denying Price's Third Motion for Stay, we agree that the district court correctly concluded that it had to deny Price's Third Motion for Stay under the Supreme Court's April 12, 2019, order. We therefore affirm the district court's denial of the Third Motion for Stay. *See Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1220 (11th Cir. 2018) (holding that we may affirm the district court on any basis that the record supports).

**AFFIRMED**.