[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12221

_____

D.C. Docket No. 1:11-cv-01246-CAP

LSSI DATA CORP.,

Plaintiff - Appellee,

versus

COMCAST PHONE, LLC,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 26, 2012)

Before CARNES, MARTIN and JORDAN, Circuit Judges.

MARTIN, Circuit Judge:

Comcast Phone, LLC (Comcast) appeals the District Court's grant of

preliminary injunctive relief, compelling the telecommunications company to

provide its directory assistance listing data directly to LSSi Data Corporation

(LSSi).  In the District Court, LSSi alleged that Comcast's refusal to provide LSSi, and similar companies, with direct access to its directory assistance listing data while providing this access to Targus Info Corporation (Targus) constitutes a violation of Sections 202, 222(e), and 251(b)(3) of the Communications Act of 1934 (the Act).  See 47 U.S.C. §§ 202, 222(e), 251(b)(3).  After careful review, and with the benefit of oral argument as well as the views of the Federal Communications Commission (FCC), we vacate the grant of the preliminary injunction and remand for further proceedings consistent with this opinion.

## I.  FACTUAL BACKGROUND

### A.  INDUSTRY CONTEXT

When local exchange carriers (LECs), such as Comcast, issue a telephone number and provide services to a customer, they collect information about that customer, such as her name, phone number, and address.[1]  This information is known as a "directory listing."[2]

---

[1] Implementation of the Telecommunications Act of 1996: Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information, 14 FCC Rcd. 15550, 15553–54 ¶¶ 1, 3 (1999) (Third Report and Order) [hereinafter 1999 Order].

[2] Section 222(e) uses the term "subscriber list information," while § 251(b)(3) uses "directory listing."  Though those two terms are interchangeable for our purposes, we use "directory listing" throughout this opinion.  See Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, 11 FCC Rcd. 19392, 19458–59 ¶ 134 (1996) (Second Report and Order) ("As a minimum standard, we find that the term 'directory listing' as used in section 251(b)(3) is synonymous with the definition of 'subscriber list information' in section [222(h)(3)].").

The directory listings of a LEC's customers amount to a significant amount of raw data. This customer data has a number of uses, so it is valuable. But before the data can be used, it must first be aggregated and processed—that is, converted into a database. See LSSi Data Corp. v. Time Warner Cable, Inc., No. 11 Civ. 7780, 2012 WL 1893650, at *32 (S.D.N.Y. May 23, 2012) (noting that processing is required to make raw customer data usable for the purpose of providing directory assistance). LSSi offers this type of data aggregation service, in addition to other services.

When the databases of several LECs are combined, the result is a fairly comprehensive collection of the contact information for residents of a particular community, which can be used in providing directory-related services. See 1999 Order, 14 FCC Rcd. at 15554 ¶ 2. For example, the combined databases can be published in paper and electronic directories, such as phonebooks, by directory publishers. Id. And it can also be used to provide directory assistance services, like 411, which allow customers to retrieve the telephone numbers of other customers quickly.[3]

------

[3] See Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, 15 FCC Rcd. 3696, 3892 ¶ 443 (1999) (Third Report and Order) (defining "directory assistance" as "a service that allows subscribers to retrieve telephone numbers of other subscribers" (quotation marks omitted)).

3

## B.  REGULATORY CONTEXT[4]

When Congress amended the Communications Act in 1996, it sought to create a "procompetitive, deregulatory national policy framework" that would speed the development and dissemination of telecommunications technology.[5]  To that end, Congress took steps to liberalize the telecommunications industry as a whole in order "to encourage (and sometimes to mandate) new competition."  Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc., 550 U.S. 45, 50, 127 S. Ct. 1513, 1517 (2007).

Since the 1996 amendments, the FCC has made clear its view that a competitive telecommunications market has as a "necessary element" the competitive provision of directory assistance, and that satisfying this "necessary element" requires that LECs give directory assistance providers access to their directory assistance listing databases (DALDs) on a nondiscriminatory basis.  2001 DL Order, 16 FCC Rcd. at 2738–39 ¶¶ 2–3.  The FCC has stated, for example, that access to accurate DALDs is "[e]ssential to a competitor's ability to provide

---

[4] A review of the industry's "regulatory history helps to illuminate the proper interpretation and application" of the Act.  Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc., 550 U.S. 45, 48, 127 S. Ct. 1513, 1516 (2007).

[5] Provision of Directory Listing Information under the Telecommunications Act of 1934, as Amended, 16 FCC Rcd. 2736, 2739 ¶ 5 (2001) (First Report and Order) [hereinafter 2001 DL Order] (quoting S. Rep. No. 104-230, at 113 (1996) (Conf. Rep.)).

directory assistance," and that "[w]ithout nondiscriminatory access to . . . directory assistance databases, competing [directory assistance] providers may be unable to offer a competitive directory assistance product."  Id. at 2738 ¶ 3.

Mindful of this broader context, we turn now to the history of dealings between these two parties.

## C.  DEALINGS BETWEEN COMCAST AND LSSi

LSSi is a certified LEC and a provider of directory assistance services, call completion services, data aggregation services, and other services to telecommunications carriers.  It thus participates in the last two stages of providing directory assistance: fashioning data into a usable database, and using the database to provide directory assistance services to customers.

On May 15, 2007, Comcast and LSSi entered into an agreement by which Comcast provided access to its raw directory listing data in exchange for LSSi helping to process and distribute that data.  The 2007 agreement was renewable year-upon-year, and either party could decide not to renew the agreement so long as they gave thirty days notice before termination.

On April 14, 2011, Comcast sent LSSi a letter terminating their arrangement. Consistent with the requirements of the 2007 agreement, Comcast informed LSSi that it would cease providing its raw customer data directly to LSSi effective May

5

15, 2011.

Instead of its prior arrangement with LSSi, Comcast now has a contract with Targus, making Targus the exclusive collator, distributor, and processor of its data. Under this new arrangement, if LSSi wishes to continue accessing Comcast's data, then LSSi will have to enter into an agreement with Targus to purchase that access.

According to Comcast, its own customers receive directory assistance services from a company called "kgb USA," and kgb USA will access Comcast's DALD from Targus at the same rates, terms, and conditions as all other directory assistance service providers, including LSSi. Thus far, Comcast has not disclosed the terms of its agreement with Targus, or the terms of the license agreement between Targus and kgb USA.

## II.  PROCEDURAL HISTORY

On April 18, 2011, LSSi filed its complaint and a motion for a temporary restraining order in the Northern District of Georgia. LSSi contends that Comcast's arrangement to provide access to its data only through Targus is discriminatory under Sections 202, 222(e), and 251(b)(3) of the Act. See 47

6

U.S.C. §§ 202, 222(e), 251(b)(3).[6]  LSSi further alleges that it will suffer irreparable harm if the Comcast-Targus deal is allowed to remain in place during the pendency of this action.

The District Court held a two-day evidentiary hearing in April 2011.  On May 4, 2011, the District Court issued an order construing LSSi's request for a temporary restraining order as a request for a preliminary injunction, and granting the injunction request, contingent on LSSi filing a $100,000 bond.

The District Court found that "Comcast has refused to provide directory assistance listing data to LSSi on terms or conditions as favorable as those given by Comcast to Targus" and that "Comcast has also refused to disclose to LSSi the terms of its arrangements with other recipients of Comcast's . . . data."  Based on those findings, the District Court concluded that there was a substantial likelihood that LSSi would prevail on the merits under all three statutes  at issue.

In addition, the District Court found that the Comcast-Targus arrangement

---

[6] Section 202(a) imposes a general nondiscrimination obligation on "common carrier[s]" in their provision of communications services, or other services "in connection with" those communications services. See 47 U.S.C. § 202(a).  The other two provisions specifically relate to DALD access.  Section 222(e) requires LECs to share their DALDs with directory publishers "on a timely and unbundled basis, under nondiscriminatory and reasonable rates, terms, and conditions." Id. § 222(e).  And Section 251(b)(3) requires, among other things, that LECs provide access to their DALDs on a "nondiscriminatory" basis to competitor carriers. Id. § 251(b)(3).  Under Section 251(b)(3), competitor "carriers" include LECs, providers of call completion services, and companies acquiring DALDs as agents or contractors to LECs. See 2001 DL Order, 16 FCC Rcd. at 2743–49 ¶¶ 12–29, 2758 ¶ 50.

7

would cause LSSi to lose competitive position and market share, and to suffer damage to its reputation and customer relationships.  From that, the District Court concluded that LSSi would experience irreparable injury if a preliminary injunction were not granted.  The District Court also concluded that the other two requirements for granting a preliminary injunction—balance of injuries and public interest—were met.

Having made these four findings, the District Court granted LSSi's preliminary injunction request, enjoining Comcast "from failing to provide directory assistance listing data directly to LSSi on a complete, accurate, timely, and nondiscriminatory basis."  LSSi filed the $100,000 injunction bond the next day, and the injunction went into effect.  Still in place, the injunction requires Comcast to provide LSSi with direct access to its data.[7]

Comcast timely filed its Notice of Appeal of the injunction on May 13, 2011.  On March 13, 2012, the District Court granted a consent motion to stay all proceedings pending the resolution of this appeal.

### III.  STANDARD OF REVIEW

This Court reviews "the ultimate decision of whether to grant a preliminary

---

[7] The injunction does not prevent Comcast from refusing to provide other LECs, directory assistance providers, and directory publishers with direct access to the data.  Based on this, Comcast says that the injunction requires Comcast to discriminate in favor of LSSi by providing LSSi direct access to data that other companies can only purchase indirectly.

8

injunction for abuse of discretion, but [it reviews] <u>de novo</u> determinations of law made by the district court en route." <u>United States v. Endotec, Inc.</u>, 563 F.3d 1187, 1194 (11th Cir. 2009) (quotation marks omitted).  "Questions of law subject to <u>de novo</u> review include questions of statutory and regulatory construction." <u>Id.</u> However, this Court reviews "findings of fact upon which the decision to grant equitable relief was made under the clearly erroneous standard." <u>Id.</u> (quotation marks omitted).

## IV.  DISCUSSION

As the party seeking a preliminary injunction, LSSi must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) that the threatened injury to LSSi outweighs whatever damage the proposed injunction might cause Comcast; and (4) that, if issued, the injunction would not be adverse to the public interest.  <u>BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC</u>, 425 F.3d 964, 968 (11th Cir. 2005).  This Court will reverse the grant of a preliminary injunction if it concludes that LSSi has failed to satisfy any of these four elements.  <u>See, e.g.,</u> <u>Warren Publ'g, Inc. v. Microdos Data Corp.</u>, 115 F.3d 1509, 1520 (11th Cir. 1997) (en banc) (vacating a preliminary injunction because the District Court erroneously found that the plaintiff had established a substantial likelihood of success on the

merits).

In this appeal, Comcast argues that the District Court misapplied the Act's nondiscrimination provisions, and therefore abused its discretion in concluding that LSSi had shown a substantial likelihood of success on the merits. Comcast also argues that the District Court erred in finding that LSSi will suffer irreparable injury in the absence of a preliminary injunction.[8]

The first question before us is whether the District Court abused its discretion in concluding that LSSi has shown "a substantial likelihood of success on the merits" of its claim. BellSouth Telecomm., 425 F.3d at 968. We conclude that the District Court did abuse its discretion in that way, so we need not address the irreparable injury issue. See Warren Publ'g, 115 F.3d at 1516.

Comcast has made four arguments for why the District Court erred in interpreting the nondiscrimination obligation imposed by the Act. First, Comcast makes the overarching argument that the Act contemplates carriers' use of agents to fulfill their statutory obligations, and that Comcast is simply meeting its DALD

---

[8] Comcast concedes that it is subject to the nondiscrimination requirement of Section 202(a) and the DALD access obligations imposed by Sections 222(e) and 251(b)(3). Neither does it contest that LSSi is a directory publisher entitled to receive nondiscriminatory access to Comcast's database under Section 222(e), nor dispute the District Court's finding that LSSi qualifies for nondiscriminatory DALD access under Section 251(b)(3). Thus, we do not have before us the question of LSSi's eligibility to receive nondiscriminatory DALD access under Section 251(b)(3). Cf. LSSi Data, 2012 WL 1893650, at *31 (holding that "LSSi has failed to present persuasive evidence that it is an entity entitled under § 251(b)(3) to non-discriminatory access to . . . directory assistance listing data").

10

access obligations through such an agent, Targus.  Second, it contends that LSSi cannot show discrimination in Comcast's DALD provision under Section 251(b)(3) because Targus and LSSi compete in an area not covered by the Act—data aggregation and distribution, rather than directory assistance services. Third, and similarly, Comcast argues that LSSi cannot show discrimination under Section 222(e) because Targus does not compete with LSSi in publishing directories.  And fourth, Comcast argues that Section 202(a) does not apply because the provision of directory listing information is not a service provided "in connection with" the communications services provided by Comcast.

We requested additional guidance from the FCC about how to construe the Act's nondiscrimination provisions, in hopes that we could better address Comcast's arguments.  The FCC responded with an amicus brief in support of neither party, expressing a view rooted in its construction of Sections 202(a), 222(e), and 251(b)(3) as well as its regulations and precedent.  After having the benefit of the views of the FCC, both LSSi and Comcast then took the opportunity to respond to the FCC's brief.

To analyze whether LSSi's claim constitutes a violation of §§ 222(e), 251(b)(3), or 202(a) of the Act it is necessary to determine what stages of the directory listing process Targus does and does not take part in.  Targus is a data

11

aggregator and processor.  Targus is not a LEC.  Targus does not offer directory assistance or publish telephone directories.  Targus is an agent of Comcast, which is a LEC, engaged for the purpose of managing and distributing directory assistance data and directory listing information.  As in many other areas of the law, when Targus acts as an agent of Comcast, it assumes the legal obligations of Comcast under the nondiscrimination provisions of the Act.  See McLeodUSA Publ'g Co. v. Wood Cnty. Tel. Co., 17 FCC Rcd. 6151, 6157 ¶¶ 17–18 (2002) (explaining that a LEC cannot avoid its obligations by relying on an agent); 2001 DL Order, 16 FCC Rcd. at 2748 ¶ 27 (finding that DA providers acting as agents for entities that qualify under section 251(b)(3) for nondiscriminatory access to the providing LEC's database should be treated as having the same entitlement to nondiscriminatory access).

We turn first to § 222(e).  This statute requires carriers that gather directory listing information to provide this information "on a timely and unbundled basis, under nondiscriminatory and reasonable rates, terms, and conditions, to any person upon request for the purpose of publishing directories in any format."  47 U.S.C. § 222(e).  The FCC has further explained that the carrier must distribute the information "to requesting directory publishers at the same rates, terms, and conditions that the carrier provides the information to its own directory publishing

12

operation, its directory publishing affiliate, or another directory publisher." 1999 Order, 14 FCC Rcd. at 15582 ¶ 58. Targus is not a directory publisher, so any differences between how Comcast provides directory listing information to Targus as compared to LSSi, would not violate § 222(e).

At the same time, we do recognize that if Comcast, through its agent Targus, provides the information to Comcast's own directory publishing operation or affiliate on preferential terms, Comcast would be violating § 222(e). Comcast denies that it receives information from Targus on a preferential basis. However, Comcast has not thus far disclosed the terms of its agreement with Targus, or the terms of the license agreement between Targus and Comcast's directory publishing affiliate. At this stage of the litigation, LSSi has not pointed to any other evidence that suggests that Comcast's directory publishing affiliate receives information from Targus on a preferred basis. Therefore, LSSi did not sufficiently show, and the District Court did not have a basis for finding, that LSSi was substantially likely to succeed with this claim.

A similar problem arises for LSSi upon our consideration of whether Comcast's arrangement with Targus violates § 251(b)(3). Under § 251(b)(3), LECs have a "duty to permit all [competing providers of telephone exchange service and telephone toll service] to have nondiscriminatory access to telephone

13

numbers, operator services, directory assistance, and directory listing, with no unreasonable dialing delays." 47 U.S.C. § 251(b)(3). Thus, the providing LEC "must permit competing providers to have access to those services that: (a) does not discriminate between or among requesting carriers . . . and (b) is equal to the access that the providing LEC gives itself." 1999 Order, 14 FCC Rcd. at 15616 ¶ 125. Targus is not itself a requesting carrier: it is not a LEC, does not provide directory assistance services for a competing LEC, and is not a competing provider of call completion services.[9] Because Targus does not fit into the definition of the entities governed by § 251(b)(3), any differences between the Comcast-Targus relationship and the Comcast-LSSi relationship cannot amount to discrimination under this provision.

However, Targus is Comcast's agent and therefore Comcast, through Targus, still has the same obligation to provide nondiscriminatory access to the data as if it were distributing it directly. Therefore, if the access Comcast provides (through Targus) to LSSi is not equal to the access Comcast provides (through Targus) to itself or its directory assistance provider, kgb USA, there would be a violation of § 251(b)(3). But as we have explained, the record now before us does

---

[9] See Implementation of the Telecommunications Act of 1996: Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information, 20 FCC Rcd. 9334, 9337 ¶ 3 (2005) (Order on Reconsideration).

14

not include sufficient information to support a finding that there is a substantial

likelihood that LSSi would succeed with this claim.

We last consider § 202(a), which results in a similar problem.[10]  Section

202(a) makes it unlawful for a carrier to "unjust[ly] or unreasonabl[y]"

discriminate in providing "like communication service[s]."  47 U.S.C. § 202(a).

There is a three-step inquiry to determine whether there has been a violation of

§ 202(a): "(1) whether the services at issue are 'like'; (2) if they are, whether there

are differences in the terms and conditions pursuant to which the services are

provided; and (3) if so, whether the differences are reasonable."  Cellexis Int'l, Inc.

v. Bell Atl. NYNEX Mobile Sys., Inc., 16 FCC Rcd. 22887, 22891 ¶ 10 (2001).

LSSi argues that Comcast discriminates by refusing to provide companies

other than Targus direct access to Comcast's raw directory listing data.  Because

we find LSSi's argument fails under the third step of this three-step inquiry, we

will confine our discussion to that step: whether any differences in Comcast's

treatment of Targus and LSSi are reasonable.

In that regard, LSSi has not provided any evidence to support a finding that

---

[10] We do not know whether section 202(a) applies to the provision of directory assistance listing data because such data may not be a "service[] for or in connection with . . . communication service."  Id.  The FCC has declined to resolve this question.  See 2001 DL Order, 16 FCC Rcd. at 2750 ¶ 31.  In addressing the claim here, we have assumed that such data is covered by § 202(a), but we do not decide this issue because it does not matter to the resolution of the appeal.

Comcast's decision to hire a single data aggregation company as an agent to facilitate its obligations to distribute directory listing data was unjust or unreasonable.  Targus, as Comcast's agent, must comply with all data distribution requirements Comcast would have to follow if it were directly distributing the data.  Further, while LSSi expressed concern that its inability to obtain the listing data directly from Comcast will hurt its competitiveness in the directory assistance listing market, LSSi provided no evidence that other companies in that market, including Comcast, have direct access to Comcast's DALD.  As far as we can tell from the record available to us, no directory publisher, directory assistance provider, or LEC would have direct access to Comcast's DALD, thereby giving them a competitive advantage in the market for these services.  Even Comcast's data assistance provider, kgb USA, purchases the DALD from Targus.

Our analysis on this is consistent with the FCC's interpretation.  In responding to our request for guidance, the FCC said that "a LEC's use of an agent to provide access to its [directory assistance] and [subscriber list information] databases does not necessarily constitute a violation of sections 222(e), 251(b)(3), or 202(a) of the Act; nor would the agent's status as a competitor in acquiring [directory assistance] and [subscriber list information] for other LECs."  The FCC thus made clear its view that LECs may use an agent to fulfill their access

16

obligations under the Act, so long as the LEC does not discriminate through its agent.  See 47 U.S.C. § 217; cf. McLeodUSA Publ'g Co, 17 FCC Rcd. at 6157 ¶¶ 17–18 (accepting in principle a LEC's use of an agent to provide that data as long as the LEC still meets its obligations under the Act).

The real question presented here, then, is not whether Targus is an agent of Comcast, or whether Comcast treated Targus, which is only involved with data aggregation and distribution, differently than LSSi.  Instead, it is whether Comcast, as the providing LEC, through Targus, as its agent, discriminates in one of two ways: 1) between requesting LECs and publishers or 2) between those companies and itself.  See 47 C.F.R. § 51.217(a)(2).  But this is not the inquiry undertaken by the District Court.  Rather, in finding that LSSi had shown a substantial likelihood of success, the District Court looked to whether Comcast was discriminating between Targus and LSSi in providing access to its data.  Indeed, the District Court emphasized that there was "a substantial likelihood that [LSSi] [could] prove that Comcast's provision of telephone numbers and listing information through Targus, a competitor of LSSi, is discriminatory."  The court also found that "Comcast's use of Targus as its agent" very likely violated Section 202(a).  Thus, the District Court's determination that LSSi had shown a substantial likelihood of success on the merits rested on a misapplication of the Act's nondiscrimination provisions;

17

therefore we must reject it.

Asking what we understand to be the correct question—whether Comcast through its agent Targus will discriminate between itself and LSSi—we conclude that LSSi has not shown a substantial likelihood of success on the merits. Before the burden of proof could be shifted to Comcast,[11] LSSi first had to "make some prima facie showing." CBS Broad., Inc v. EchoStar Comm. Corp., 265 F.3d 1193, 1202 (11th Cir. 2001). This "ensures that the party opposing a preliminary injunction is not saddled with the burden of production, initially, and that the proponent of this extraordinary and drastic remedy is required to clearly establish the burden of persuasion as to the four requisites." Id. (quotation marks omitted). LSSi failed to meet that threshold burden.

Our ruling here is limited to the propriety of the preliminary injunction issued by the District Court against Comcast. We conclude that it was not properly

---

[11] "[T]he burdens at the preliminary injunction stage track the burdens at trial." Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 429, 126 S. Ct. 1211, 1219 (2006); see also Ashcroft v. Am. Civil Liberties Union, 542 U.S. 656, 666, 124 S. Ct. 2783, 2791–92 (2004) (reasoning that, where a nonmovant would bear the burden of persuasion at trial, the movant seeking a preliminary injunction "must be deemed likely to prevail" if the nonmovant fails to make an adequate showing). At trial, Comcast must demonstrate "with specificity" that it is providing nondiscriminatory access. 47 C.F.R. § 51.217(e)(1); see also 1999 Order, 14 FCC Rcd. at 15621 ¶ 134. Here, Comcast only submitted a declaration by Targus's Executive Vice President, making the conclusory assertion that "Targus provides kgb USA with Comcast's data at the same rates, terms and conditions that Targus offers to all others entitled to it, including LSSi . . . ." It did not provide any specifics about the terms of its agreement with Targus, or the terms on which Targus provides access to LSSi, kgb USA, or other directory assistance providers.

18

granted.  To be clear, our review of this record reveals that the potential for unlawful discrimination is present: Comcast, through Targus, may be giving itself and its own directory assistance provider preferential treatment.  However, LSSi has not yet established, and the District Court did not find, that LSSi is substantially likely to succeed on a claim that this type of discrimination is present in violation of the Act.  Further proceedings and discovery, including an examination of the contract between Comcast and Targus, may change that.

## V.  CONCLUSION

Having concluded that LSSi failed to establish a substantial likelihood of success on the merits of its discrimination claims against Comcast, "we need not address the additional elements required for a preliminary injunction."  Warren Publ'g, 115 F.3d at 1516.  Instead, we vacate the preliminary injunction and remand the case to the District Court for further proceedings consistent with this opinion.

**VACATED and REMANDED.**