JORDAN, Circuit Judge,
concurring:
I concur in Judge Barkett’s opinion for the court, and write to emphasize certain points about this case.
1. We are not making any definitive legal pronouncements about the ultimate constitutionality of Fla. Stat. § 414.0652. We are reviewing the grant of a preliminary injunction on an undeveloped record, and therefore are considering only the district court’s determination that Mr. Le-brón is likely to succeed on the merits of his Fourth Amendment claim. See, e.g., Doran v. Salem Inn, Inc., 422 U.S. 922, 932, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (“In these circumstances, and in the light of existing case law, we cannot conclude that the district court erred by granting preliminary injunctive relief. This is the extent of our appellate inquiry, and we ‘intimate no view as to the ultimate merit of [respondent’s] contentions.’ ”) (citation omitted); Di Giorgio v. Causey, 488 F.2d 527, 528-29 (5th Cir.1973) (“[0]n appeal from a preliminary injunction this Court does not concern itself with the merits of the controversy .... No attention is paid to the merits of the controversy beyond that necessary to determine the presence or absence of an abuse of discretion.”).
2. Because of the limited nature of our review, our look at the “substantial likelihood of success” prong is for abuse of discretion, and is not de novo. There is language in some of our cases indicating that we take a plenary look at legal issues in reviewing the grant or denial of preliminary injunctive relief, but the better view (and the one consistent with Supreme Court precedent) is that a deferential standard of review applies when we are dealing with the district court’s assessment of probability of success on a limited record. See, e.g., Ashcroft v. A.C.L.U., 542 U.S. 656, 666, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004) (concluding that district court’s determination as to likelihood of success “was not an abuse of discretion”); LSSi Data Corp. v. Comcast Phone LLC, 696 F.3d 1114, 1120 (11th Cir.2012) (“The first question before us is whether the district court abused its discretion in concluding that LSSI has shown a ‘substantial likelihood of success’ on the merits of its claim.”); BellSouth Telecommunications, *1219 Inc. v. MCImetro Access Transmission Services, LLC, 425 F.3d 964, 970 (11th Cir.2005) (“The district court did not abuse its discretion in determining that BellSouth had established a substantial likelihood of success.”); Ingram v. Ault, 50 F.3d 898, 900 (11th Cir.1995) (reviewing district court’s “substantial likelihood of success” determination for abuse of discretion); Cafe 207, Inc. v. St. Johns County, 989 F.2d 1136, 1137 (11th Cir.1993) (“Whether the district court’s determination of this point [substantial likelihood of success] is right or wrong, the record here indicates no abuse of discretion.”).
3. Insofar as burdens are concerned, this is not the typical preliminary injunction case. It is undisputed that a drug test is a search under the Fourth Amendment, and that the government generally has the burden of justifying a warrantless search. See, e.g., United States v. Bachner, 706 F.2d 1121, 1126 (11th Cir.1983) (“If the movant establishes an expectation of privacy and that the search and seizure took place without a search warrant, then the burden shifts to the state to establish that an exception to the search warrant requirement was applicable in the subject case and that the search and seizure was, in fact, a reasonable one.”) (citing Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). Thus, as the Supreme Court has explained, the government has the burden of establishing a “special need” for a warrantless and suspicionless drug testing requirement. See Chandler v. Miller, 520 U.S. 305, 318, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). See also United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951) (“the burden is on those seeking the exemption [to the warrant requirement] to show the need for it”). This means that the state, and not Mr. Lebrón, had the burden below with respect to the constitutionality of § 414.0652, for “the burdens at the preliminary injunction stage track the burdens at trial.” Gonzales v. O Centro Beneficente Uniao do Vegetal, 546 U.S. 418, 429, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006). See also Ashcroft, 542 U.S. at 666, 124 S.Ct. 2783 (preliminary injunction case: “As the government bears the burden of proof on the ultimate question of COPA’s constitutionality, [the plaintiffs challenging COPA] must be deemed likely to prevail unless the government has shown that [the plaintiffs’] proposed less restrictive alternatives are less effective than COPA.”).
4. I am not persuaded by the only'other appellate decision addressing the constitutionality of a warrantless and suspicion-less drug testing program for recipients of government aid — the Sixth Circuit’s now-vacated panel decision in Marchwinski v. Howard, 309 F.3d 330, 333-37 (6th Cir. 2002) (reversing preliminary injunction entered by district court and indicating that Michigan pilot program requiring warrant-less and suspicionless drug testing of welfare applicants was likely constitutional), vacated on grant of rehearing en banc, 319 F.3d 258 (6th Cir.2003), decision of district court affirmed by equally divided vote, 60 Fed.Appx. 601 (6th Cir.2003) (en banc). First, the Sixth Circuit panel — contrary to the teaching of cases like Ashcroft and Gonzales — apparently placed the burden on the plaintiffs to demonstrate the unconstitutionality of the state’s warrantless and suspicionless drug testing program. See 309 F.3d at 336-37. Second, the Sixth Circuit panel relied too heavily on “special needs” cases arising in the school setting. See id. at 334-35. Those cases, it seems to me, are distinguishable because they involved two critical aspects not present here — the lessened expectation of privacy held by minor students, and the state’s custodial and tutelary role in education. See Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 654, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (“Central, in our view, to the present case is the fact that the *1220 subjects of the Policy are (1) children, who (2) have been committed to the temporary custody of the State as schoolmaster.”); Bd. of Education v. Earls, 536 U.S. 822, 828, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002) (“As in Vernonia, the context of the public school environment serves as the backdrop for the analysis of the privacy interest at stake and the reasonableness of the drug testing policy in general.”). Third, the Sixth Circuit panel did not give enough weight to the Supreme Court’s decision in Chandler. See 309 F.3d at 334-35. As a result, the district court here did not abuse its discretion in refusing to follow the vacated panel decision in Marchwinski.
5. In my view the doctrine of unconstitutional conditions is somewhat incoherent, and some of the cases decided under it are difficult to reconcile. See generally Kathleen M. Sullivan, Unconstitutional Conditions, 102 HaRV. L. Rev. 1413, 1416 (1989) (“As applied ... the doctrine of unconstitutional conditions is riven with inconsistencies”). Compare, e.g., Lyng v. Automobile Workers, 485 U.S. 360, 368, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988) (denying food stamps to workers on strike does not infringe on First Amendment rights) with, e.g., Sherbert v. Verner, 374 U.S. 398, 404-OS, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (denying unemployment benefits to a Seventh Day Adventist who rejected suitable employment opportunities because she would not work on Saturdays violates the First Amendment). Nevertheless, the district court did not abuse its discretion in following, at least preliminarily, those decisions which teach that the government cannot condition the receipt of, or entitlement to, a benefit on the surrender of a constitutional right. See, e.g., Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (“For at least a quarter-century, this Court has made clear that even though a person has no ‘right’ to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests ... ”); Bourgeois v. Peters, 387 F.3d 1303, 1324 (11th Cir.2004) (“The doctrine of unconstitutional conditions prohibits terminating benefits, though not classified as entitlements, if the termination is based on motivations that other constitutional provisions proscribe.”) (citation omitted). Although the state argues that any tension in the law has been clarified by Rust v. Sullivan, 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991), that argument is unconvincing because Rust explicitly distinguished the “unconstitutional conditions” cases and did not purport to overrule Perry and its progeny. See id. at 196, 111 S.Ct. 1759 (“Petitioners’ reliance on [Perry ] is unavailing, however, because here the Government is not denying a benefit to anyone, but is instead simply insisting that public funds be spent for the purposes for which they were authorized.”). This case, unlike Rust, deals directly with a denial of government benefits.
6. Finally, I am skeptical about the state’s insistence at oral argument that the Fourth Amendment permits the warrant-less and suspicionless drug testing of all TANF applicants even if the evidence shows, conclusively and beyond any doubt, that there is 0% drug use in the TANF population. The state’s rationale — that such drug testing is permissible because the TANF program seeks to “move people from welfare to work” — proves too much. Every expenditure of state dollars, taxpayers hope, is for the purpose of achieving a desirable social goal. But that does not mean that a state is entitled to require warrantless and suspieionless drug testing of all recipients of state funds (e.g., college students receiving Bright Futures scholar *1221 ships, see Fla. Stat. § 1009.53) to ensure that those funds are not being misused and that policy goals (e.g., the graduation of such students) are being achieved. Constitutionally speaking, the state’s position is simply a bridge too far.