# SUPREME COURT OF THE UNITED STATES

JEFFERSON S. DUNN, COMMISSIONER, ALABAMA
DEPARTMENT OF CORRECTIONS *v.* DOMINEQUE
HAKIM MARCELLE RAY

ON APPLICATION TO VACATE STAY

No. 18A815.   Decided February 7, 2019

The application to vacate the stay of execution of sentence of death entered by the United States Court of Appeals for the Eleventh Circuit on February 6, 2019, presented to JUSTICE THOMAS and by him referred to the Court, is granted.

On November 6, 2018, the State scheduled Domineque Ray's execution date for February 7, 2019. Because Ray waited until January 28, 2019 to seek relief, we grant the State's application to vacate the stay entered by the United States Court of Appeals for the Eleventh Circuit. See *Gomez* v. *United States Dist. Court for Northern Dist. of Cal.,* 503 U. S. 653, 654 (1992) (per curiam) ("A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief.").

JUSTICE KAGAN, with whom JUSTICE GINSBURG, JUSTICE BREYER, and JUSTICE SOTOMAYOR join, dissenting from grant of application to vacate stay.

Holman Correctional Facility, the Alabama prison where Domineque Ray will be executed tonight, regularly allows a Christian chaplain to be present in the execution chamber. But Ray is Muslim. And the prison refused his request to have an imam attend him in the last moments of his life. Yesterday, the Eleventh Circuit concluded that there was a substantial likelihood that the prison's policy violates the First Amendment's Establishment Clause, and stayed Ray's execution so it could consider his claim on its merits. Today, this Court reverses that decision as

an abuse of discretion and permits Mr. Ray's execution to go forward. Given the gravity of the issue presented here, I think that decision profoundly wrong.

"The clearest command of the Establishment Clause," this Court has held, "is that one religious denomination cannot be officially preferred over another." *Larson* v. *Valente*, 456 U. S. 228, 244 (1982). But the State's policy does just that. Under that policy, a Christian prisoner may have a minister of his own faith accompany him into the execution chamber to say his last rites. But if an inmate practices a different religion—whether Islam, Judaism, or any other—he may not die with a minister of his own faith by his side. That treatment goes against the Establishment Clause's core principle of denominational neutrality. See, *e.g.*, *Epperson* v. *Arkansas*, 393 U. S. 97, 104 (1968) ("[Government] may not . . . aid, foster, or promote one religion or religious theory against another"); *Zorach* v. *Clauson*, 343 U. S. 306, 314 (1952) ("The government must be neutral when it comes to competition between sects").

To justify such religious discrimination, the State must show that its policy is narrowly tailored to a compelling interest. I have no doubt that prison security is an interest of that kind. But the State has offered no evidence to show that its wholesale prohibition on outside spiritual advisers is necessary to achieve that goal. Why couldn't Ray's imam receive whatever training in execution protocol the Christian chaplain received? The State has no answer. Why wouldn't it be sufficient for the imam to pledge, under penalty of contempt, that he will not interfere with the State's ability to perform the execution? The State doesn't say. The only evidence the State has offered is a conclusory affidavit stating that its policy "is the least restrictive means of furthering" its interest in safety and security. That is not enough to support a denominational preference.

I also see no reason to reject the Eleventh Circuit's finding that Ray brought his claim in a timely manner. The warden denied Ray's request to have his imam by his side on January 23, 2019. And Ray filed his complaint five days later, on January 28. The State contends that Ray should have known to bring his claim earlier, when his execution date was set on November 6. But the relevant statute would not have placed Ray on notice that the prison would deny his request. To the contrary, that statute provides that both the chaplain of the prison and the inmate's spiritual adviser of choice "may be present at an execution." Ala. Code §15–18–83(a) (2018). It makes no distinction between persons who may be present within the execution chamber and those who may enter only the viewing room. And the prison refused to give Ray a copy of its own practices and procedures (which would have made that distinction clear). So there is no reason Ray should have known, prior to January 23, that his imam would be granted less access than the Christian chaplain to the execution chamber.

This Court is ordinarily reluctant to interfere with the substantial discretion Courts of Appeals have to issue stays when needed. See, *e.g.*, *Dugger* v. *Johnson*, 485 U. S. 945, 947 (1988) (O'Connor, J., joined by Rehnquist, C. J., dissenting). Here, Ray has put forward a powerful claim that his religious rights will be violated at the moment the State puts him to death. The Eleventh Circuit wanted to hear that claim in full. Instead, this Court short-circuits that ordinary process—and itself rejects the claim with little briefing and no argument—just so the State can meet its preferred execution date. I respectfully dissent.