[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 21-10348
Non-Argument Calendar
_____

D.C. Docket No. 2:20-cv-01026-RAH

WILLIE B. SMITH, III,

                                                        Plaintiff - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,

                                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

Before WILSON, MARTIN, and JORDAN, Circuit Judges.

MARTIN, Circuit Judge:

    Plaintiff-Appellant Willie B. Smith, III is an Alabama death-row prisoner in

the custody of the Alabama Department of Corrections (ADOC) at Holman

Correctional Facility.[1] Smith appeals the District Court's denial of a preliminary injunction. This appeal presents the question of whether a death-row prisoner is entitled to have his religious advisor present inside the execution chamber at the time of execution. After careful review of the record, we reverse the District Court's denial of injunctive relief.

## I.    Factual and Procedural Background

In 1991 an Alabama jury convicted Smith of murder. The jury recommended that Smith receive the death sentence, which the court imposed. The Alabama Court of Criminal Appeals affirmed Smith's conviction and sentence. *See Smith v. State*, 838 So. 2d 413 (Ala. Crim. App. 2002) (per curiam). And the Supreme Court denied Smith's petition for certiorari. *Smith v. Alabama*, 537 U.S. 1090 (2002) (mem.). The Supreme Court also denied Smith's petitions for habeas corpus. *See Smith v. Dunn*, 141 S. Ct. 188 (2020) (mem.).

The Alabama Supreme Court set Smith's execution for February 11, 2021. On December 14, 2020, Smith commenced this suit challenging the ADOC's execution policies.

---

[1] Holman is the ADOC's primary correctional facility for housing death row inmates and is the only correctional facility in Alabama that carries out executions.

The ADOC does not permit a death-row inmate to have anyone in the execution chamber with them when they are executed. This is a relatively new policy. While the ADOC has never permitted an outside spiritual advisor in the execution chamber, before April 2019, the ADOC required Holman's Christian chaplain—employed by ADOC—to be in the execution chamber during executions. The ADOC changed this policy in 2019 after an inmate challenged it and other inmates brought challenges to similar policies across the country. *See Dunn v. Ray*, 139 S. Ct. 661 (2019) (mem.); *Murphy v. Collier*, 139 S. Ct. 1475 (2019) (mem.). Now the ADOC does not allow any person into the execution chamber except for the condemned prisoner, members of the execution team, and certain medical personnel.

Smith filed this suit in the Middle District of Alabama, seeking declaratory and injunctive relief, asking the court to require the ADOC to allow Smith's religious advisor, Pastor Robert Paul Wiley Jr., in the execution chamber during his execution. Specifically, Smith alleged that the ADOC policy violates his rights under the Religious Land Use and Institutionalized Person Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc et seq., the Alabama Religious Freedom Amendment (ARFA) to the Alabama constitution, Ala. Const. art. I, § 3.01, and the Establishment and Free Exercise clauses of the First Amendment to the U.S. Constitution. Smith also

filed a motion for a preliminary injunction. The ADOC opposed Smith's motion

and moved to dismiss Smith's complaint.

After hearing oral arguments and considering the supplemental evidence

submitted by the parties, the District Court issued an order that granted the

ADOC's motion to dismiss as to Smith's Establishment Clause claim but denied its

motion as to Smith's claims under RLUIPA, the Free Exercise Clause, and ARFA.

And, as is most important to this case, the District Court also denied Smith's

motion for a preliminary injunction. After weighing the parties' arguments, the

District Court determined that Smith had failed to show a substantial likelihood of

success on the merits.

Smith now appeals the District Court's denial of his motion for a

preliminary injunction with respect to his RLUIPA and ARFA claims.

## II.     Standard of Review

We review a district court's decision to deny a preliminary injunction for

abuse of discretion. *Scott v. Roberts*, 612 F.3d 1279, 1289 (11th Cir. 2010). "In so

doing, we review the findings of fact of the district court for clear error and legal

conclusions *de novo*." *Id.* "This scope of review will lead to reversal only if the

district court applies an incorrect legal standard, or applies improper procedures, or

relies on clearly erroneous factfinding, or if it reaches a conclusion that is clearly

4

unreasonable or incorrect." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223,

1226 (11th Cir. 2005) (per curiam); *see also Siegel v. LePore*, 234 F.3d 1163, 1175

(11th Cir. 2000) (en banc) (per curiam) (finding that the District Court's order

denying injunctive relief could only be reversed on appeal "if there was a *clear*

*abuse of discretion*").

## III.    Analysis

RLUIPA prohibits the government from "impos[ing] a substantial burden on

the religious exercise of a person residing in or confined to an institution" unless

the government demonstrates that burden "(1) is in furtherance of a compelling

governmental interest; and (2) is the least restrictive means of furthering that

compelling governmental interest." 42 U.S.C.A. § 2000cc-1(a). Therefore, to

establish a prima facie case, a plaintiff must show: (1) that he engaged in a

religious exercise; and (2) that the religious exercise was substantially burdened.

*Smith v. Allen*, 502 F.3d 1255, 1276 (11th Cir. 2007), *abrogated on other grounds*

*by Sossamon v. Texas*, 563 U.S. 277 (2011). Once the plaintiff demonstrates a

prima facie case, "the government must then demonstrate that the challenged

government action 'is in furtherance of a compelling governmental interest' and 'is

the least restrictive means of furthering that compelling governmental interest.'"

*Id.* (quoting 42 U.S.C. §§ 2000cc–1(a), 2000cc–2(b)).

A party seeking injunctive relief must establish four elements: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo*, 403 F.3d at 1225–26. "Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Id.* at 1226.

For the reasons explained below, we hold the District Court abused its discretion by finding Smith failed to demonstrate his religious exercise was substantially burdened. Because Smith has established a prima facie case, we reach the District Court's alternative grounds for finding that Smith failed to show a substantial likelihood of success on the merits of his claims. Although we agree that the ADOC has a compelling interest in maintaining security, we believe the District Court abused its discretion in finding the ADOC's policy is the least restrictive means to further that compelling interest. We will now address the merits of his claims.[2]

---

[2] Smith argues he is likely to succeed on the merits of his ARFA claim for the same reasons he is likely to succeed on his RLUIPA claim. Because the ARFA standard is almost identical to the RLUIPA standard—except that a plaintiff is required to show only a "burden" on his religion, rather than the higher "substantial burden" standard under RLUIPA—we will not address the ARFA claim separately. *See Thai Meditation Assoc. of Ala., Inc. v. City of Mobile*, 980 F.3d 821, 839–40 (11th Cir. 2020).

### A.    Likelihood of Success on the Merits

#### 1.  Prima Facie Case

Smith first contends that the ADOC's policy of not allowing his religious advisor in the execution chamber violates his rights under RLUIPA. RLUIPA prohibits the imposition of burdens on the ability of prisoners to worship as they please. 42 U.S.C. § 2000cc et seq. The institutionalized-persons provisions provide "very broad protection" to prisoners' religious liberties, prohibiting state and local institutions from placing arbitrary or unnecessary restrictions on their practices. *Holt v. Hobbs*, 574 U.S. 352, 356 (2015).

A successful RLUIPA claim must first pass a two-part test: the prisoner must show (1) he engaged in a religious exercise; and (2) that religious exercise was substantially burdened. *Smith*, 502 F.3d at 1276 (citing, inter alia, 42 U.S.C. § 2000cc-1(a)). A "religious exercise" is broadly defined under RLUIPA as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

We begin our discussion of Smith's RLUIPA claim by noting that we do not in any way doubt Smith's sincerely held religious beliefs. In his complaint, Smith vows that he is a practicing Christian, that it is "integral to [his] faith that Pastor Wiley be physically present with him at the time of his execution," and that Pastor

7

Wiley's presence in the execution chamber would provide Smith spiritual comfort in his final moments. Both Smith and Pastor Wiley submitted declarations to the District Court averring that Smith is a devout Christian who has a close, spiritual connection with Pastor Wiley. We thus agree with the District Court's conclusion "that Smith's practice of Christianity and his belief that his pastor should be physically present with him in the execution chamber constitute a 'religious exercise' for purposes of a RLUIPA claim."

Having met his initial burden of demonstrating that his observance of Christianity—and his belief that Pastor Wiley's presence will provide him comfort during his execution—constitutes "religious exercise" under the statute, we now address whether the ADOC's policy constitutes a "substantial burden" on Smith's religious exercise. *See* 42 U.S.C. § 2000cc-1(a).

To prevail on a RLUIPA claim, a prisoner must first prove that the challenged practice places a substantial burden on his religious exercise. *See Holt*, 574 U.S. at 361. Evidence sufficient to show a substantial burden falls on a spectrum. *See Thai Meditation*, 980 F.3d at 830–31. At one end, Smith may show the ADOC policy substantially burdens the exercise of his religion by showing it "completely prevents [him] from engaging in religiously mandated activity, or requires participation in an activity prohibited by religion." *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004). At the other end,

8

Smith may show the ADOC policy requires him to modify his behavior. *Id.*; *Thai Meditation*, 980 F.3d at 831.

The District Court abused its discretion by questioning whether Smith's belief that Pastor Wiley should be present in the execution chamber was only a "preference," rather than a tenet or practice of his religion, and by relying on alternative ways Smith could practice his religion.[3] There are two key principles underlying the substantial burden analysis. First, the Supreme Court has made clear that courts should not inquire into whether a prisoner prefers one sort of religious exercise over another. *Holt*, 574 U.S. at 362 (holding the District Court erred by inquiring into whether all Muslims believe that men must grow beards); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (declining to question whether sincerely held beliefs "are mistaken or insubstantial"). This Court has reiterated the same principle. *See Cambridge Christian School, Inc. v. Fla. High School Athletic Ass'n, Inc.*, 942 F.3d 1215, 1247 (11th Cir. 2019) ("The Supreme Court itself has consistently refused to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." (quotation marks omitted)); *see also id.* at 1248 ("In short, courts must not presume

---

[3] The District Court relied on this Court's decision in *Allen*, 502 F.3d at 1277–79, to reach its decision. However, after *Holt*, this is no longer the analysis. *See Holt*, 574 U.S. at 360–61 ("RLUIPA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief." (quotation marks omitted)).

to determine the place of a particular belief in a religion or the plausibility of a religious claim." (quotation marks omitted)). The second principle is that the availability of alternative means of practicing religion is not a relevant consideration under RLUIPA. *Holt*, 574 U.S. at 361–62 (clarifying that the substantial burden inquiry does not ask "whether the RLUIPA claimant is able to engage in other forms of religious exercise").

The District Court here violated both principles. Although it correctly found Smith had a sincere belief that Pastor Wiley should be present in the execution chamber, the court erred by finding Smith's exercise of that belief was not substantially burdened simply because Smith expressed a "preference" rather than prove his belief was fundamental to his religion. The court also improperly relied on alternative ways that Smith could practice his religion, including that Smith can visit and pray with Pastor Wiley leading up to his execution and Pastor Wiley can observe the execution from the viewing room.

Properly applying the substantial burden test, the evidence shows Smith has met his burden. Smith believes "the point of transition between life and death is important" and Pastor Wiley can provide spiritual guidance and comfort, "including by holding his hand, praying with him in his final moments, and easing the transition between the worlds of the living and the dead." Smith believes Pastor Wiley's physical presence is "essential" to Smith's "spiritual search for

10

redemption." We see no reason to overturn the District Court's finding that Smith's belief was sincere, and instead evaluate the impact of the ADOC policy on that belief. With the ADOC policy currently in place, Pastor Wiley cannot be physically present with Smith during his execution. Smith will be unable to hold Pastor Wiley's hand and pray with him in his final moments. This required change in the way Smith carries out his religious practices, directly resulting from the ADOC's policy, is enough for Smith to demonstrate the exercise of his religion is substantially burdened. *See Thai Meditation*, 980 F.3d at 831. We therefore conclude that Smith has stated a prima facie case.

### 2. *Compelling Interest/Least Restrictive Means*

Smith argues that "the ADOC was required to present evidence that it has a compelling government interest in barring Pastor Wiley from the execution chamber." We reject his narrow definition of the government's interest. The ADOC's compelling interest is in maintaining safety, security, and solemnity during an execution. The prohibition on Pastor Wiley's presence, specifically, inside the execution chamber might promote the ADOC's compelling interest—but it is not the interest itself. *See Gutierrez v. Saenz*, 141 S. Ct. 127, 128 (2020) (mem.) (granting a stay of execution and directing the District Court to determine "whether serious security problems would result if *a* prisoner facing execution is

11

permitted to choose the spiritual adviser the prisoner wishes to have in his immediate presence during the execution" (emphasis added)).

"It is well established that states have a compelling interest in security and order within their prisons." *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996) (per curiam) (finding Florida has a compelling interest in prison security); *see also Knight v. Thompson*, 797 F.3d 934, 944 (11th Cir. 2015) (noting that "it is also beyond dispute that the ADOC has compelling interests in security, discipline, . . . and safety within its prisons"). After hearing evidence presented by both Smith and the ADOC, the District Court found that the ADOC "has a compelling interest of the highest order in preserving the solemnity, safety and security of its executions." The District Court's findings referenced the evidence concerning security threats during executions (both experienced and anticipated), the extensive vetting process for execution team members, and the history of disciplinary problems with ADOC-employed chaplains and religious volunteers.

Having determined that the ADOC has a compelling interest in maintaining safety, security, and solemnity during an execution, the District Court then went on to find the ADOC also met its burden of showing its policy excluding all individuals—including spiritual advisors regardless of faith and employer—from the execution chamber is narrowly tailored to further its compelling security interest. Our review of the record leads us to the conclusion that this was an abuse

of discretion. Contrary to the District Court's holding, the ADOC "has not shown that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by" Smith in this case. *Hobby Lobby*, 573 U.S. at 728.

"The Supreme Court recently reminded us that '[t]he least-restrictive-means standard is exceptionally demanding.'" *Davila v. Gladden*, 777 F.3d 1198, 1207 (11th Cir. 2015) (quoting *Hobby Lobby*, 573 U.S. at 728). "If a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt*, 574 U.S. at 365 (quotation marks omitted). Put differently, unless the ADOC has proved that it cannot accommodate Pastor Wiley's presence in the Smith's execution chamber, it must allow him to be there. In deciding whether a policy is the least restrictive means, courts must inquire into "whether efficacious less restrictive measures *actually exist*." *Knight*, 797 F.3d at 946–47 (emphasis added).

The District Court did no such inquiry here. Smith presented evidence that on two occasions since July 2020, the federal BOP has allowed the spiritual advisor of the prisoner's choice to be present in the execution chamber. Smith's evidence shows that, under the BOP's policy, the BOP was able to approve the prisoner's request for their spiritual advisor about two weeks before their scheduled execution. The advisors underwent "the same standard background

13

check required of all visitors to BOP facilities." Neither spiritual advisor caused any disruption or disturbance in the execution chamber.

The practices of other prison systems, like the BOP, is highly probative of whether less restrictive measures can be pursued without compromising a compelling interest. The Supreme Court has said that where other prisons allow prisoners to engage in the particular religious practice "while ensuring prison safety and security," it "suggests that the [DOC] could satisfy its security concerns through a means less restrictive than denying petitioner the exemption he seeks." *Holt*, 574 U.S. at 368–69. Yet the District Court did not consider the BOP policy in reaching its decision. Indeed, its decision does not mention Smith's evidence regarding the BOP's practice at all. We think it troubling that the District Court ignored this highly probative evidence. *Id.* at 368 ("[T]he policies followed at other well-run institutions would be relevant to a determination of the need for a particular type of restriction."); *but see Knight*, 797 F.3d at 1293 (rejecting plaintiffs' reliance on evidence of policies in 39 other state prisons because the District Court considered the "detailed record" and did not give "unquestioning deference" to ADOC policy).

The District Court's failure to consider the BOP's practice is especially concerning because the ADOC conceded that it could undertake those very same measures. Specifically, ADOC acknowledged it could "[c]onceivably . . . require

14

an inmate to elect his spiritual advisor as soon as his execution date is set, and that person could be subjected to a heightened background investigation." The ADOC thus conceded that an alternative policy existed, and that alternative is the precise policy the BOP has followed without any problems. And at the same time the ADOC provided no evidence that adopting this alternative—requiring spiritual advisors to undergo a background investigation—would undermine its compelling interest in security. *See Holt*, 574 U.S. at 365 ("The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objection party." (alterations adopted and quotation marks omitted)).

This is where the District Court's analysis went astray. The court credited the ADOC's assertion that the background-investigation process may result in excluding a prisoner's chosen spiritual advisor as well as the ADOC's claim that it does not want to limit the people who could serve as a spiritual advisor. But the ADOC's assertion is not evidence that it cannot achieve its desired goal (security) through the proposed alternative (a background investigation) without imposing a substantial burden on the exercise of religion by Smith. *Hobby Lobby*, 573 U.S. at 728; *see Knight*, 797 F.3d at 945 (upholding ADOC policy because it showed

15

"Plaintiffs' proposed alternative . . . does not eliminate the ADOC's security, discipline, hygiene, and safety concerns").

In sum the District Court credited the ADOC's concession that it could comply with a policy similar to that followed by the BOP, but did not hold the ADOC to its burden to show its compelling interests were undermined by the less restrictive policy. This was an abuse of discretion.

Because the ADOC failed to meet its burden to show its current policy is the least restrictive means of furthering its compelling interest in maintaining security, we hold Smith has shown a substantial likelihood of success on the merits of his claims. We turn now to the remaining preliminary injunction requirements.

## B.  Irreparable Injury

The irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (quotation marks omitted). In *Ray v. Commissioner, Alabama Department of Corrections*, 915 F.3d 689 (11th Cir. 2019),[4] this Court held that a Muslim prisoner established irreparable injury in a religious freedom case when, "[i]n the absence of a stay, Ray will die without the benefit . . . of sharing his final moments

---

[4] The Supreme Court vacated this Court's stay, holding that Ray's claims were untimely. *Dunn v. Ray*, 139 S. Ct. 661, 661 (2019) (mem.). The Supreme Court did not overturn this Court's merits analysis. *See id.*

with a cleric who shares his faith and who will be able to provide prayer, spiritual support and comfort at the moment of death." *Id.* at 701. Smith is facing the same injury here.[5]

Moreover, as the District Court acknowledged, "carrying out executions in an unconstitutional manner would result in irreparable injury." [Doc. 32: 55] Therefore, because we conclude that the ADOC policy substantially burdened Smith's religious exercise, it follows that his execution would result in irreparable injury.

There is one additional consideration raised by the District Court—that Smith could have sought a preliminary injunction "much earlier than weeks prior to his execution." There are two problems with this. The first is that a delay is not dispositive—it merely weighs against a showing of irreparable harm. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). The second is that, when acknowledging RLUIPA's "broad protection of religious exercise," 42 U.S.C. § 2000cc–3(g), and Smith's showing that he is likely to succeed on his claim that the ADOC policy violates his religious freedom, any delay is not so

---

[5] Other courts have also held that an RLUIPA violation constitutes irreparable injury. *See, e.g.*, *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012); *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005).

weighty. Without an injunction, ADOC will likely execute Smith without Pastor Wiley in the room with him as he passes. There is no do-over in this scenario.

For these reasons, we hold that Smith has shown he will suffer irreparable injury if ADOC maintains its current policy.

### C. Balance of Harms and the Public Interest

"[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (quotation marks omitted). Courts must also determine where the public interest lies. *See id.* at 26. It is only if the injunction is in the public's interest that it may be granted. *Id.* at 20.

As this Court noted in *Ray*, "neither Alabama nor the public has any interest in carrying out an execution in a manner that violates . . . the laws of the United States." 915 F.3d at 701–02. And other courts have recognized that, because RLUIPA enforces the First Amendment and must be construed broadly to protect religious exercise, an RLUIPA violation is in the public interest and tips the balance of harms in the plaintiff's favor.[6] Moreover, the District Court also agreed

---

[6] *See Warsoldier*, 418 F.3d at 1002; *City Walk - Urban Mission Inc. v. Wakulla Cnty.*, 471 F. Supp. 3d 1268, 1288 (N.D. Fla. 2020); *Christian Fellowship Ctrs. of New York, Inc. v. Vill. of Canton*, 377 F. Supp. 3d 146, 166–67 (N.D.N.Y. 2019); *Marshall v. Corbett*, No. 3:13-CV-02961, 2019 WL 4741761, at *12 (M.D. Pa. Aug. 8, 2019), *report and recommendation adopted*, No. 3:13CV2961, 2019 WL 4736224 (M.D. Pa. Sept. 27, 2019); *First Lutheran Church v. City of St. Paul*, 326 F. Supp. 3d 745, 769 (D. Minn. 2018).

that executing a prisoner who is deprived of the opportunity to practice his faith would "fail[] to serve the public interest." Because we are required to correct the court's conclusion that Smith did not meet that burden here, we believe the balance of harms to the parties and the public interest tip in Smith's favor.

## IV.    Conclusion

The District Court abused its discretion by improperly inquiring into Smith's religious beliefs and practices and finding the ADOC policy does not substantially burden Smith's religious exercise. The District Court also incorrectly applied the least restrictive means inquiry. As a result, we hold that the court erred in finding Smith failed to establish a substantial likelihood of success on the merits of his RLUIPA and ARFA claims. We also hold that, in light of the burden ADOC's policy places on Smith's religious exercise and the broad protection afforded by RLUIPA, the balance of the remaining injunction factors tip in Smith's favor. We therefore reverse the District Court's denial of Smith's motion for injunctive relief and grant the injunction requiring the ADOC to permit Smith to have Pastor Wiley present in the execution chamber at the time of execution.

**REVERSED.**

JORDAN, Circuit Judge, dissenting.

If this were a plenary appeal, I might well agree with the court that the ADOC has failed to show under RLUIPA that it sought to accomplish its compelling security (and other) interests through the least restrictive means. For example, Cheryl Price, the ADOC's regional director, testified that the ADOC never looked into less restrictive means to safeguard its security interests in the execution chamber other than barring the presence of non-employee religious advisors. There was also evidence that the Federal Bureau of Prisons permits spiritual advisors in the execution chamber, and that Colorado and New Mexico did so as well before eliminating the death penalty. That practice, absent any indication of problems, undercuts the ADOC's flat-out prohibition to a fair degree. *See Spratt v. Rhode Island Dept. of Corrections*, 482 F.3d 33, 41 n.11 (1st Cir. 2007) ("[T]o meet [RLUIPA's] least restrictive means test, prison administrators generally ought to explore at least some alternatives, and their rejection should generally be accompanied by some measure of explanation.")

But in an appeal from the grant or denial of a preliminary injunction, we review for abuse of discretion and generally do not render any definitive pronouncements on the merits. *See, e.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975); *Di Giorgio v. Causey*, 488 F.2d 527, 528-29 (5th Cir. 1973). As

20

relevant here, our consideration of the substantial likelihood of success prong—including whether the ADOC is using the least restrictive means to accomplish its compelling interests—is also for abuse of discretion. *See Ashcroft v. A.C.L.U.*, 542 U.S. 656, 666 (2004); *LSSi Data Corp. v. Comcast Phone LLC*, 696 F.3d 1114, 1120 (11th Cir. 2012).

The abuse of discretion standard generally allows for a "range of choice as to what [the district court] decides[.]" *McLane Co., Inc. v. EEOC*, 137 S. Ct. 1159, 1169 (2017). *See also United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc) (the abuse of discretion standard permits a "range of choice so long as that choice does not constitute a clear error of judgment"). Given this deferential standard of review, I would affirm the district court's denial of injunctive relief to Mr. Smith.

The district court explained that, in its view, RLUIPA's least restrictive means requirement does not mean or suggest that prison officials must refute every conceivable option or alternative. Given the current state of the law, that seems like a reasonable assessment to me. *See Holt v. Hobbs*, 574 U.S. 352, 371 (2015) (Sotomayor, J., concurring) (noting that "nothing in the Court's opinion suggests that prison officials must refute every conceivable option to satisfy RLUIPA's least restrictive means requirement"). *Accord Greenhill v. Clarke*, 944 F.3d 243, 251

21

(4th Cir. 2019); *Fowler v. Crawford*, 534 F.3d 931, 940 (8th Cir. 2008); *Spratt*, 482 F.3d at 41 n.11.

On the evidentiary side of the calculus, the ADOC put on evidence that having non-employees in the execution chamber when an inmate is being put to death would create security problems due to issues of trustworthiness and uncertainty about how such persons would behave or cope with the execution; that requiring background checks and vetting for non-employee spiritual advisors can limit the broad choice that inmates currently have in choosing their advisors; that background checks (including criminal NCIC checks) and training of non-employee spiritual advisors can take time; and that it cannot realistically hire, as employees, persons from all faiths to be in the execution chamber with inmates when they are being put to death. The district court concluded, from this and other evidence, that the ADOC had considered alternatives to its ban on non-employee spiritual advisors being in the execution chamber—such as heightened background investigation procedures—but found those alternatives to be more restrictive of an inmate's ability to freely choose a spiritual advisor. And the court also explained that the ADOC had such strong interests in safety, security, and solemnity that it could not permit even a slight chance of interference with executions inside the chamber.

Whether the district court got RLUIPA's least restrictive means requirement right or wrong, I do not believe that its decision constitutes an abuse of discretion. *See Café 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993) ("Whether the district court's determination of this point [i.e., substantial likelihood of success] is right or wrong, the record here indicates no abuse of discretion."). Because of my resolution of this issue, I need not and do not express a view on the other matters addressed by the court.